**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 16 WAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered 1/21/16 at No. 1711 WDA |
| v. | : | 2014, affirming the order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered 10/7/14 at Nos. CP-02-CR- |
| SEAN CULLEN-DOYLE, | : | 0000261-2014, CP-02-CR-0001018- |
| | : | 2014, CP-02-CR-0002489-2014, CP- |
| Appellant | : | 02-CR-0002529-2014, CP-02-CR- |
| | : | 0003271-2014 and CP-02-CR-0004050- |
| | : | 2014 |
| | : | |
| | : | |
| | : | ARGUED: November 2, 2016 |

**_OPINION_**

**CHIEF JUSTICE SAYLOR**                                    **DECIDED: July 20, 2017**

This matter concerns a statutory risk reduction incentive program, eligibility for which requires that the offender lack a "history of present or past violent behavior." The question presented on appeal concerns whether a single conviction for burglary – which the parties agree is a crime demonstrating violent behavior – constitutes such a history.

In 2009, the General Assembly codified the Recidivism Risk Reduction Incentive Act (the "RRRI Act" or the "Act"), as Chapter 45 of the Prisons and Parole Code.[1] The Act is intended to encourage eligible offenders to complete Department of Corrections

---
[1] _See_ Act of Aug. 11, 2009, P.L. 147, No. 33, §7 (as amended 61 Pa.C.S. §§4501-4512). Originally passed in 2008, the Act briefly appeared as Chapter 53 of the Law and Justice Code. _See_ Act of Sept. 25, 2008, P.L. 1026, No. 81, §9 (repealed).

programs that are designed to reduce recidivism. *See* 61 Pa.C.S. §§4502, 4504(b). Eligible offenders may also be able to take advantage of a reduced sentence. *See id.* §4505(c). As noted, eligibility is conditioned, in relevant part, upon the absence of a "history of present or past violent behavior," *id.* §4503 (defining, *inter alia*, "eligible offender"), although the Act does not define that phrase. *See generally Commonwealth v. Chester*, 627 Pa. 429, 432-34, 101 A.3d 56, 57-58 (2014).

The Commonwealth filed a number of informations against Appellant, each charging him with burglary, conspiracy, and theft-related offenses. Appellant pled guilty to several counts of criminal conspiracy to commit first-degree felony burglary and one count of first-degree felony burglary. *See* 18 Pa.C.S. §§903(c), 3502. Appellant asked the common pleas court to sentence him under the RRRI Act. The court found Appellant ineligible for the RRRI program and sentenced him to three-to-six years' imprisonment on the burglary conviction, followed by an aggregate fifteen-year term of probation on the conspiracy counts.

In a post-sentence motion, Appellant asked the court to reconsider his eligibility for the program. In response, the court noted that, in *Chester*, this Court held that burglary is a crime of violence. The court then denied the motion for reconsideration, referencing Appellant's "prior first degree burglary conviction," *Commonwealth v. Cullen-Doyle*, Nos. CP-02-CR-0000261-2014, *et al.*, Order at 1 (C.P. Allegheny Oct. 7, 2014), although it was unclear whether the court was referring to the present offense or another, earlier offense.

On appeal, Appellant maintained he was never convicted of burglary on a prior occasion, and the Commonwealth admitted it could not find any indication of such a prior conviction. Therefore, the parties filed a joint motion to remand the matter to the common pleas court to determine whether that court's ruling was based on inaccurate

information concerning Appellant's criminal record. The Superior Court acknowledged the confusion on this point and the lack of clarity in the county court's order denying reconsideration. *See Commonwealth v. Cullen-Doyle*, 133 A.3d 14, 16 n.4 (Pa. Super. 2016). However, the intermediate court found the uncertainty immaterial and denied the motion, *see id.*, concluding that Appellant was ineligible for the RRRI program based solely on his present conviction for a crime of violence. *See id.* at 22.

We granted further review on this latter question. *See Commonwealth v. Cullen-Doyle*, ___ Pa. ___, 138 A.3d 609 (2016) (*per curiam*). As the issue entails statutory interpretation, our review is *de novo* and plenary. *See In re Estate of Wilner*, ___ Pa. ___, ___, 142 A.3d 796, 801 (2016).

Appellant argues it is unlikely that the statutory text excluding from eligibility those with a history of violent behavior was intended to encompass a first-time, single-count offender since, if that had been the General Assembly's design, it could have said so more clearly by using inclusive language phrased in terms of "all convictions involving violent behavior." Brief for Appellant at 11. He notes, in this regard, that the RRRI Act's express intent is to encourage inmates who are capable of reform to participate in programs that tend to reduce recidivism. *See id.* at 10 (citing 61 Pa.C.S. §4502 (relating to Chapter 45's purpose)). He offers that:

> If these offenders volunteer to participate and successfully complete the program, they are rewarded with a reduced prison sentence. A reduced prison sentence has the benefit of relieving the taxpayers of some of the expense of warehousing offenders and it offers the offender an incentive and a second chance to become a law abiding citizen upon release.

*Id.*

For its part, the Commonwealth acknowledges that the concept of a "present history" is unusual, but it urges this Court to endorse the Superior Court's interpretation because the overall phrase, "present or past violent behavior," is extremely broad and

suggests that a single violent crime can alone be disqualifying. *See* Brief for Appellee at 22-23. In the alternative, the Commonwealth states that, if this Court agrees with Appellant on the statutory construction issue, we should remand for clarification as to whether Appellant had a prior burglary conviction. *See id.* at 25-26.

The object of any judicial exercise in statutory interpretation is to ascertain and effectuate legislative intent. *See* 1 Pa.C.S. §1921(a); *Commonwealth v. Griffith*, 613 Pa. 171, 177, 32 A.3d 1231, 1235 (2011). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Commonwealth v. Corban Corp.*, 598 Pa. 459, 463, 957 A.2d 274, 276 (2008) (internal quotation marks and citation omitted). Here, however, and particularly as the word "history" ordinarily concerns past events and can refer to a pattern of behavior, we find the salient aspect of the statute, referring to a "history of present or past violent behavior," 61 Pa.C.S. §4503, to be materially ambiguous, thereby implicating recourse to the rules of statutory construction.[2] We may discern legislative intent by considering, *inter alia*, the occasion for the provision, the context in which it was passed, the mischief it was designed to remedy, and the object it sought to attain. *See* 1 Pa.C.S. §1921(c).

---

[2] In dissent, Justice Todd indicates that we have not articulated competing reasonable interpretations of the statute. *See* Dissenting Opinion, *slip op.* at 2. In response, and to be specific, the statute could be read, as the dissent proposes, to allow for the word history to encompass a single, present offense. Alternatively, it could be read to expressly authorize the inclusion of the present offense in consideration of whether there is an overall history, comprised of more than one offense. *See, e.g.*, *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (indicating that, under Section 1983 of the Civil Rights Act, liability for failure to supervise only arises where there is a "history" of violent acts, and not where there is only one such act); *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997) (noting that a "history" of domestic abuse is "not necessarily established by a single documented incident"); *Simmons v. Simmons*, 649 So. 2d 799, 801 (La. Ct. App. 1995) (concluding that a "history" of family violence, for statutory purposes, cannot be proved by a single act of violence).

Applying such precepts, we believe the Act's underlying purpose and rationale, examined in the context of the relevant legislative history, demonstrate that the General Assembly did not intend to preclude eligibility under the present circumstances. First, the stated purpose of the Act, which was enacted as part of a broader initiative to reform the penal system, is to "encourage eligible offenders . . . to participate in . . . programs . . . that reduce the likelihood of recidivism." 61 Pa.C.S. §4504(b).[3] Although the enactment does not contain any language expressly relating to first-time offenders or penalizing recidivism as such, a commonly accepted corollary to the Act's express purpose of reducing recidivism is that first-time offenders are usually more amenable to reform than inmates who have persisted in criminal conduct.[4] Indeed, the Pennsylvania Commission on Sentencing (the "Commission"), which was charged with identifying important factors affecting recidivism, found that "[t]he most consistent predictors of recidivism were age and number of prior arrests[,]" and that "offenders with a greater number of prior arrests, were more likely to recidivate." PA. COMM'N ON SENTENCING,

---

[3] RRRI incentive programs were first implemented as part of a package of bills to reform the prison and parole system. *See* Act of Sept. 25, 2008, P.L. 1026, No. 81; Act of Sept. 25, 2008, P.L. 1050, No. 82; Act of Sept. 25, 2008, P.L. 1052, No. 83; Act of Sept. 25, 2008, P.L. 1062, No. 84.

[4] *See* Judge Cheryl B. Moss, *Shuffling the Deck: The Role of the Courts in Problem Gambling Cases*, 6 UNLV GAMING L.J. 145, 157 (2016) (highlighting the effectiveness of Rhode Island's diversion program in reducing recidivism among first-time felony offenders); Andrew D. Leipold, *Recidivism, Incapacitation, and Criminal Sentencing Policy*, 3 U. ST. THOMAS L.J. 536, 550-51 (2006) (observing that "the recidivism rates for first time offenders are significantly lower than the rates for repeat offenders[,]" and that, according to a study conducted by the United States Sentencing Commission, "only 12% [of first-time offenders] are re-arrested, and only 4% are reconvicted"); Aaron J. Rappaport, *Criminal History and the Purpose of Sentencing*, 9 FED. SENT'G REP. 184, 185 (1997) ("[A]n offender with two or three convictions might have a higher risk of recidivism than a first-time offender . . ..").

RISK/NEEDS ASSESSMENT PROJECT, FACTORS THAT PREDICT RECIDIVISM FOR VARIOUS TYPES OF OFFENSES, INTERIM REPORT 3, at 1 (2011).[5]

Against this backdrop, use of the word "history" assumes greater significance because it evidences an intent to render ineligible individuals with "an established record or pattern" of violent behavior. WEBSTER'S NEW COLLEGE DICTIONARY 537 (3d ed. 2008) (defining "history" as "an established record or pattern"). Indeed, we believe this understanding engenders the most cogent and natural interpretation of the statute, since it permits a sentencing court to assess whether an offender has an established record or pattern of past or present violent behavior. As such, it can be fairly inferred that, in aiming to reduce recidivism, the Legislature sought to offer greater reform opportunities for first-time offenders than for repeat offenders.

Further, looking to the consequences of different interpretations, s*ee* 1 Pa.C.S. §1921(c)(6), the Superior Court's reading results in imposing eligibility requirements that are so stringent that a large number of individuals who could potentially reform through participation in RRRI programming will be prevented from participating, given that a single instance of "violence," broadly construed, would be disqualifying. If that had been the General Assembly's objective, it could have articulated such intent with a definition of "eligible offender" that expressly precluded *any* instance of a conviction for a violent crime. As has been noted by the Commission, as well as the Secretary of Corrections, eligibility criteria under the Act are already quite strict, to the point that the RRRI program's potential utility is demonstrably diminished.[6]

---

[5] The Commission undertook this initiative as a result of the mandates imposed in the same bill that included the Act. *See* Act of Sept. 25, 2008, P.L. 1026, No. 81, §4.

[6] *See Hearing on Prison Overcrowding Before the S. Judiciary Comm.,* 2009-2010 Leg., Reg. Sess. 3 (Pa. 2009) (statement of Jeffrey A. Beard, Secretary, Department of Corrections) ("The problem with . . . [the program] is that the eligibility criteria limits (continued…)

We acknowledge that Section 4503 prescribes that individuals who have been convicted of certain enumerated offenses are ineligible for participation in the program. *See* 61 Pa.C.S. §4503 (listing disqualifying offenses including: the use of a deadly weapon; personal injury crimes as set forth in the Crime Victims Act, 18 P.S. §11.103; crimes requiring registration as a sex offender or involving incest, open lewdness, or internet child pornography; and certain violations of the Controlled Substances, Drug, Device and Cosmetic Act). Significantly, however, Section 4503's list of disqualifying offenses – which include both violent and potentially non-violent crimes – does not include burglary. Hence, application of the statutory-interpretation principle that "the inclusion of specific matters in a statute implies the exclusion of other matters," *Dauphin Cnty. Pub. Defender's Office v. Court of Common Pleas of Dauphin Cnty.*, 578 Pa. 59, 67, 849 A.2d 1145, 1150 (2004) (citation omitted), suggests the Legislature did not intend for *all* crimes of violence to be disqualifying in and of themselves.

Lastly, to the extent doubt remains concerning the proper interpretation of the language, the rule of lenity bolsters the conclusion that the single, present conviction for a violent crime does not constitute a history of violent behavior. *See* 1 Pa.C.S. §1928(b)(1) (indicating that penal statutes are to be strictly construed); *Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) ("[W]here ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused."). Although not located in the Crimes Code or the Sentencing

---

(…continued)
some offenders who could benefit from these programs from participation."); *Report from the Pa. Comm'n on Sentencing to the H. Judiciary Comm.* 6 (Oct. 2009) (noting that "[m]any of the sentencing alternatives created by the General Assembly to serve as rehabilitative alternatives to traditional incarceration . . . are presently underutilized[,]" in part, because of "extensive ineligibility criteria, particularly as related to present or past offenses"), *cited in* Stewart Greenleaf, *Prison Reform in the Pennsylvania Legislature*, 160 U. PA. L. REV. PENNUMBRA 179, 190 (2011).

Code, the RRRI Act is a statute that has the effect of imposing a sentence; as such, it is subject to the rule of lenity.[7]  Thus, any ambiguity surrounding the meaning of the word "history" should be resolved in favor of those seeking admission into the program.

In light of our holding, the need for clarification concerning Appellant's prior record may now have renewed salience notwithstanding that the parties' original joint motion for a remand was denied by the Superior Court.  Regardless, it will be for the Superior Court to determine in the first instance if any further issues remain to be resolved in that tribunal before remanding to the common pleas court.

Accordingly, we vacate the order of the Superior Court, and remand for further proceedings.

Justices Baer, Donohue and Mundy join the opinion.

Justice Todd files a dissenting opinion in which Justices Dougherty and Wecht join.

---

[7] *See, e.g.*, *United States v. R.L.C.*, 503 U.S. 291, 305, 112 S. Ct. 1329, 1338 (1992) ("[T]he rule [of lenity] has been applied not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing[.]"); *Commonwealth v. Shiffler*, 583 Pa. 478, 495, 879 A.2d 185, 195-96 (2005) (observing that provisions affecting criminal sentences are penal in nature and, consequently, subject to the rule of lenity).