J-S64035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAVID S. IRVIN | |
| Appellant | No. 432 MDA 2017 |

Appeal from the Judgment of Sentence January 24, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at No(s):
CP-22-CR-0001146-2016

BEFORE: PANELLA, J., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:                **FILED DECEMBER 14, 2017**

Appellant, David S. Irvin, appeals from the judgment of sentence of 54 to 120 months' imprisonment imposed in the Dauphin County Court of Common Pleas after a jury found him guilty of two counts of delivering a controlled substance.[1]  Appellant claims that (1) the verdict was against the weight of the evidence, (2) the sentence was manifestly excessive, and (3) the trial court erred in finding him ineligible for the Recidivism Risk Reduction Incentive ("RRRI") program.[2]  We affirm in part, vacate in part, and remand for further consideration of Appellant's RRRI-eligibility.

The trial court summarized the facts history of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] **See** 61 Pa.C.S. §§ 4501-4512.

At trial, Detective Nicholas Licata testified to the circumstances and events of September 15, 2015 and September 17, 2015 that lead to [Appellant's] arrest for delivery of a controlled substance. The Detective testified that while using a confidential informant ("CI") two separate drug buys were made from [Appellant]. The CI was a trusted informant that had worked with the Detective on previous cases.

On September 15, 2015, the CI set up a drug buy with a person the CI identified as [Appellant]. In order to contact [Appellant], the CI called the phone number (717) 329-3241. The CI was searched by the Detective to ensure the CI did not have drugs or money on his or her person and the Detective then gave the CI $70 to make the drug buy. The CI walked to meet [Appellant][3] and did not have contact with anyone else before entering a white Hyundai sedan with a Pennsylvania license plate, JPF-4162. The Commonwealth entered into evidence as exhibit one, a video of the CI entering a white car. The CI rode in the car until he or she was dropped off. The Detective picked up the CI and upon searching the CI, found a bundle of heroin and no money. The bundle of heroin and a lab report determining the substance contained in the bundle was heroin were entered into evidence by the Commonwealth as exhibits two and three, respectively.

_____

[3] Detective Licata and the CI initially drove to a location in order to complete the drug sale. At that location, [Appellant] called the CI and had him walk to a different location to meet [Appellant].

_____

On September 17, 2015, the CI set up another controlled buy after contacting a person the CI again identified as [Appellant]. The CI called the same phone number as was called on September 15, 2015. Following the same process as the first buy, the CI was searched and then given money before walking to meet [Appellant]. The CI again entered a white Hyundai bearing the same license plate as the first drug sale. After the CI was dropped off, he or she was picked up by the Detective and searched.

The CI again had a bundle of heroin and no money. The CI informed the detective that it was [Appellant] who sold the drugs to him or her. The Commonwealth had the second bundle of heroin and a lab report identifying the substance as heroin entered into evidence as exhibits four and five, respectively.

[Appellant] was arrested on September 18, 2015. [Appellant] was searched and the search found a cell phone and car keys. The Detective called the number the CI had called and the phone found in [Appellant's] possession rang and displayed the Detective's phone number as the incoming call. The car keys found in [Appellant's] possession unlocked the car that had picked up the CI on the two separate occasions. A search warrant was obtained for the car, which turned up wax bags commonly used to package heroin and a rental agreement showing that the car was rented to a person other than [Appellant].

Another Harrisburg Police Department Officer was called to testify for the Commonwealth. The officer's duty during the investigation was to conduct surveillance. The Commonwealth entered into evidence, as exhibits eight through eleven, various videos and photographs showing [Appellant] entering and operating the vehicle. [Appellant] did not testify at the trial and did not put on evidence or call any witnesses. [Appellant] attacked the use of a CI, the lack of eyewitness evidence of the actual drug exchange, and the lack of physical proof such as DNA and fingerprints.

Trial Ct. Op., 3/3/17, at 2-4 (record citations and some footnotes omitted).

On December 6, 2016, a jury found Appellant guilty of two counts of delivering controlled substance. On February 21, 2017, the trial court sentenced Appellant to serve two consecutive terms of twenty-seven to sixty months' imprisonment. Appellant filed post-sentence motions seeking RRRI eligibility and a downward modification of his sentence, both of which the

trial court denied. Appellant filed a timely appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement.

Appellant presents the following questions for our review:

I. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S POST-SENTENCE MOTION BECAUSE THE VERDICT WAS SO CONTRARY TO THE WEIGHT OF THE EVIDENCE AS TO SHOCK ONE'S SENSE OF JUSTICE?

II. WHETHER THE IMPOSITION OF AN AGGREGATE SENTENCE OF 54 TO 120 MONTHS' INCARCERATION WAS CLEARLY UNREASONABLE, SO MANIFESTLY EXCESSIVE AS TO CONSTITUTE AN ABUSE OF DISCRETION, AND INCONSISTENT WITH THE PROTECTION OF THE PUBLIC, THE GRAVITY OF THE OFFENSES, AND APPELLANT'S REHABILITATIVE NEEDS WHERE THE COURT IMPOSED CONSECUTIVE JAIL SENTENCES ON COUNTS ONE AND TWO?

III. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S ELIGIBILITY FOR [RRRI] AT THE TIME OF HIS SENTENCING?

Appellant's Brief at 8 (footnote omitted).

Appellant first claims that the verdict was against the weight of evidence. Appellant emphasizes that there was no direct evidence that he delivered the drugs to the CI because the transactions took place beyond the sight of the officers surveilling the controlled buys and the CI did not testify at trial. *Id.* at 21. Appellant further contends that the Commonwealth failed to preserve the text messages or phone calls allegedly arranging the buys. *Id.*. Lastly, Appellant asserts that the evidence obtained from the search of the white Hyundai sedan was inconclusive because he did not rent the vehicle, the "baggies" found in the car did not match the packaging

materials used in the controlled buys, and the money found in the car did not include the buy money used by the CI. *Id.*. No relief is due.

The standards for reviewing a challenge to the weight of the evidence are well settled.

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted).

Instantly, the trial court denied Appellant's post-sentence motion for a new trial. The court determined there was ample circumstantial evidence supporting the jury's verdict and the jury properly determined the credibility of the witnesses. Trial Ct. Op. at 4, 6 & n.4. The record reveals that Detective Licata had the CI arrange the two controlled purchases by contacting Appellant's cellular phone. The detective searched the CI for contraband before both purchases. Appellant was observed driving the rented white Hyundai involved in both purchases. Detective Licata saw the CI enter the passenger side of the vehicle after which Appellant drove around several blocks and then returned to an area near the initial location of the meetings. After exiting the vehicle, the CI gave the detective bundles

of heroin. Additionally, following Appellant's arrest, Detective Licata confirmed that the cellular phone contacted by the CI was Appellant's by calling it. Thus, although Appellant's arguments reveal minor gaps in the evidence, we discern no abuse of discretion in the trial court's determinations that the verdicts did not shock one's sense of justice. **See Lyons**, 79 A.3d at 1067. Accordingly, Appellant's first claim fails.

Appellant next claims that the trial court's aggregate sentence of 54 to 120 months' imprisonment was manifestly excessive. Appellant's Brief at 16, 24. He contends that the trial court focused solely on the gravity of the offense and failed to consider mitigating circumstances. **Id.** at 26. Additionally, he notes that the detective could have arrested him after the first controlled buy, but arranged a second buy for which he was sentenced consecutively. **Id.** at 27. Appellant concludes he is entitled to resentencing. **Id.** We disagree.

It is well settled that

> a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in the following four-pronged analysis:
>
> > [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016) (some citations omitted).

This Court has stated that

[t]he determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Further:

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super.), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015).

Appellant timely filed the instant appeal, and he included a Pa.R.A.P. 2119(f) statement in his brief. Appellant also filed a post-sentence motion in which he that the aggregate sentence was "clearly unreasonable" and "excessive" because it was too severe a punishment in light of his rehabilitative needs. Appellant's Post-Sentence Motion, 1/30/17, ¶¶ 6-7. Therefore, Appellant's post-sentence motion adequately preserved his arguments that the sentence was excessive because the trial court improperly focused on the gravity of the offense and failed to consider mitigating circumstances. Further, we conclude that these arguments raise a substantial question under the circumstances of this case. *See Caldwell*,

117 A.3d at 770 (finding substantial question raised by "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence"). Therefore, we grant review as to these questions.

However, Appellant's post-sentence motion did not include an argument that the consecutive nature of the sentences was unreasonable because the detective did not to arrest him after the first controlled purchase. Moreover, that argument was not fairly raised at sentencing. Therefore, that argument is waived, and we will not consider it in this appeal. *See Williams*, 151 A.3d at 625.

It is well settled that

> [t]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. . . . An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 25 (Pa. Super. 2017) (citation omitted).

When reviewing a sentence, this Court should consider four factors:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

- 8 -

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d)(1)-(4).

[W]hile a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, *i.e.*, the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007).

Instantly, the trial court heard arguments from the parties. The Commonwealth noted that based on Appellant's prior record score of five, the standard range minimum sentence was twenty-one to twenty-seven months with an aggravated range of thirty-three months. N.T. Sentencing, 1/24/17, at 3. The Commonwealth emphasized that Appellant had two prior convictions for selling heroin and, in this case, engaged in the two sales one month after being release on parole. *Id.* at 2-5. The Commonwealth requested a sentence of 60 to 120 months' imprisonment based on

Appellant's repeated criminality and unwillingness to comply with the law. *Id.* at 5. Appellant responded that he was "a family man" and although he was the youngest of ten children, he was looked upon as the breadwinner for the family. *Id.* at 6. He conceded that he was on parole at the time of the present offense, but noted that the maximum sentence for his prior conviction would be "pushed back" beyond 2025. *Id.* at 5-6. Appellant thus requested concurrent, standard-range sentences with the "understanding that he is going to be receiving a consecutive back hit of almost two years." *Id.* at 7.

When sentencing Appellant to consecutive terms of 27 to 60 months' imprisonment, the trial court explained:

> [A]s the district attorney appropriately pointed out, we all know the dangers of heroin in our community. We see it here every day, and that's of serious concern. What makes this all the more serious is the fact that you had just been released from state prison for that same offense and you are back to selling or distributing heroin once again.
>
> So I guess there is a fair argument that that previous sentence didn't necessarily grab your attention. So I believe that has to be taken into account as well. And, of course, in this case, there are two separate incidents; very close in time, but, nevertheless, two separate incidents.

*Id.* at 8-9.

The record thus reveals that the trial court considered the gravity of the offense, the protection of the community, and Appellant's rehabilitative needs. Moreover, we discern no abuse of discretion in its weighing of the

relevant sentencing factors. Accordingly, Appellant's claim that the sentence was clearly unreasonable or manifestly excessive warrants no relief.

Appellant lastly claims that the trial court erred in finding him ineligible the RRRI program based on his 2008 conviction for felony-one burglary. Appellant argues that his prior convictions did not involve any acts of violence. Appellant's Brief at 28. He further asserts that the General Assembly "only intended to exclude **repeat** offenders of violent behavior from participation in the RRRI program." *Id.* at 29 (emphasis added).

At the time Appellant briefed this issue, the Pennsylvania Supreme Court was considering the question of whether a defendant was RRRI-eligible when he was convicted and sentenced for a single crime of violence but had no other convictions disqualifying him from the RRRI program. *See Commonwealth v. Cullen-Doyle*, 138 A.3d 609 (Pa. 2016) (granting allowance of appeal); *see also* Appellant's Brief at 28-29. The Pennsylvania Supreme Court has decided *Cullen-Doyle* during the pendency of this appeal and answered the question for review in the affirmative. *Commonwealth v. Cullen-Doyle*, 164 A.3d 1239 (Pa. 2017). However, we are constrained to conclude that *Cullen-Doyle* does not entitle Appellant to relief.

The RRRI Act is a penal statute. *Commonwealth v. Chester*, 101 A.3d 56, 60 n.6 (Pa. 2014). Eligibility for the RRRI is codified in 61 Pa.C.S. § 4503, and questions of eligibility raise questions of law. *Commonwealth*

*v. Finnecy*, 135 A.3d 1028, 1033 (Pa. Super.), *appeal denied*, 159 A.3d 935 (Pa. 2016). Thus, our standard of review is *de novo,* and our scope of review is plenary. *Id.*

Section 4503 states in relevant part:

> A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department [of corrections] and who meets all of the following eligibility requirements:
>
> (1) Does not demonstrate a history of present or past violent behavior. . . .

61 Pa.C.S. § 4503(1).[3] The Pennsylvania Supreme Court has concluded that "a conviction for first-degree burglary constitutes 'violent behavior' under Section 4503(1)." *Chester*, 101 A.3d at 65. However, the Court did not consider whether a single conviction for felony-one burglary constitutes a history of violent behavior. *Id.*

In *Cullen-Doyle*, the defendant pleaded guilty to one count of felony-one burglary, as well as several counts of conspiracy to commit felony-one burglary. *Cullen-Doyle*, 164 A.3d at 1241. The defendant requested a RRRI sentence, which the trial court denied based on its belief that the

---

[3] Section 4503 contains five additional criteria that renders a defendant ineligible for a RRRI sentence, *inter alia*, (1) a prior conviction or sentence based on the use of a deadly weapon, (2) prior adjudications or convictions for personal injury crimes and certain sexual offenses, (3) prior sentences for certain drug offense based on certain former mandatory minimums, and (4) a pending trial or sentencing for a charge that would cause the defendant to become ineligible if convicted or sentenced. *See* 61 Pa.C.S. § 4503(2)-(6).

defendant had a prior felony-one burglary conviction. *Id.* The defendant appealed, and this Court affirmed. *Id.* We noted that the record did not support the trial court's finding that the defendant had a prior record. *Id.* Nevertheless, we concluded the defendant's present conviction for felony-one burglary rendered him ineligible for the RRRI program.[4] *Id.* (citing **Commonwealth v. Cullen-Doyle**, 133 A.3d 14 (Pa. Super. 2016)).

The defendant appealed to the Pennsylvania Supreme Court arguing that Section 4503(1) was not "intended to encompass a first-time, single-count offender." *Id.* The Supreme Court granted allowance of appeal, and the defendant asserted that if the General Assembly intended to preclude such offenders from RRRI-eligibility, it could have used broader language in Section 4503(1) to encompass any conviction involving violent behavior.[5] *Id.* The defendant further suggested that excluding first-time offenders would undermine the program's goals of offering offenders "a second chance to become law abiding citizens" and relieving taxpayers of some of the burdens of "warehousing offenders[.]" *Id.* (citation omitted) The Commonwealth responded that the phrase "history of present or past violent behavior" was sufficiently broad to disqualify an offender based on a single

---

[4] The parties in **Cullen-Doyle** agreed that felony-one burglary established "violent behavior." **Cullen-Doyle**, 164 A.3d at 1240.

[5] Appellant raises a similar argument in this appeal. Appellant's Brief at 29.

violent crime. *Id.* Alternatively, the Commonwealth asserted that a remand was necessary to clarify the defendant's prior record. *Id.* at 1241-42.

The Pennsylvania Supreme Court vacated this Court's order, holding that a "single, present conviction for a violent crime does not constitute a history of violent behavior." *Cullen-Doyle*, 164 A.3d at 1244. The Court noted that the phrase "history of present or past violent behavior" in Section 4503(1) "could be read . . . to allow for the word history to encompass a single, present offense[, or] to expressly authorize the inclusion of the present offense in consideration of whether there is an overall history, comprised of more than one offense." *Id.* at 1242 n.2. The Court concluded that the Section 4503(1) was "materially ambiguous" because "the word 'history' ordinarily concerns past events and can refer to a pattern of behavior" and proceeded to construe the intent of General Assembly in light of the purposes of RRRI. *Id.* at 1242.

The *Cullen-Doyle* Court first noted the RRRI program's express purpose was to encourage eligible offenders to participate in the program and reduce the likelihood of recidivism. *Id.* (discussing 61 Pa.C.S. § 4504(b)). The Court recognized a "commonly accepted corollary . . . that first-time offenders are usually more amenable to reform than inmates who have persisted in criminal conduct." *Id.* (footnote omitted). In this light, the Court concluded that the General Assembly "sought to offer greater

reform opportunities for first-time offenders than repeat offenders." *Id.* at 1243.

Second, the Court analyzed the consequences of the divergent interpretations of the RRRI-eligibility requirements. *Id.* The Court concluded that "broadly construing" Section 4503 to find a defendant ineligible based on "a single instance of 'violence'" would be "so stringent that a large number of individuals who could potentially reform" would be prevented from participating in the program. *Id.* Such a construction would diminish the program's "potential utility." *Id.* (footnote omitted). The Court recognized that Section 4503 excludes individuals based on discrete factors, such as conviction for enumerated offenses. *Id.*; *see also* note 3, *supra*. Because those discrete factors did not include burglary, the Court found apt the principle of statutory interpretation that the "inclusion of specific matters . . . implies the exclusion of other matters." *Cullen-Doyle*, 164 A.3d at 1243 (citation omitted). The Court thus inferred that the General Assembly "did not intend for **all** crimes of violence to be disqualifying in and of themselves." *Id.* at 1244.

Lastly, having found ambiguity in the phrase "history of present or past violent behavior" the *Cullen-Doyle* Court applied the "rule of lenity" to bolster its conclusion that a "single, present conviction for a violent crime does not constitute a history of violent behavior." *Id.* 164 A.3d at 1244. The Court emphasized that "any ambiguity surrounding the meaning of the

word 'history' should be resolved in favor of those seeking admission into the program."[6] *Id.*

The specific holding of *Cullen-Doyle*—that a defendant's "single, present" conviction does not render the defendant ineligible for the RRRI program—is not dispositive of the issue raised in the instant appeal, *i.e.*, the effect of a past conviction for a crime of violence. Nevertheless, the Court's reasoning in *Cullen-Doyle* persuades us that a single conviction for felony-one burglary does not render Appellant RRRI-ineligible. As noted in *Cullen-Doyle*, the phrase "history of present or past behavior" is ambiguous, and an overly broad reading of the phrase would undermine the purposes of the statute by unduly restricting access to the program with the **potential** to reform.[7] Moreover, the General Assembly's election not to designate burglary among numerous discrete factors disqualifying a defendant from

---

[6] Although the *Cullen-Doyle* Court concluded that the defendant's single present conviction did not render him ineligible for the RRRI program, the Court found that "the need for clarification concerning [the defendant's] prior record may now have renewed salience . . . ." *Id.* at 1244. The Court noted that this Court previously denied the parties' joint motion for remand to determine the defendant's prior record and whether, as the trial court suggested, the defendant had a prior conviction for felony-one burglary. *Id.* at 1241, 1244. The Pennsylvania Supreme Court, therefore, remanded the case to this Court to resolve any further issues before remanding to the trial court. *Id.* at 1244.

[7] Additionally, eligibility for the RRRI program does not create a right to be paroled on the expiration of the RRRI minimum sentence. Rather, release on a RRRI sentence is contingent on the defendant's successful completion of the program as well as a discretionary decision by the Board of Probation and Parole.

RRRI implies the exclusion of a single conviction for burglary as a *per se* disqualifying crime of violence. Lastly, we must apply the rule of lenity to resolve the ambiguity in section 4503(1) in favor of eligibility. Applying this reasoning to the present case, we hold that a single, past conviction for felony-one burglary does not disqualify a defendant from eligibility in the RRRI program.

Accordingly, we conclude that the trial court erred in finding that Appellant's single, past conviction for burglary rendered him ineligible for the RRRI program under section 4503(1). Thus, we vacate the judgment of sentence and remand for reconsideration of Appellant's eligibility for the RRRI program.

Judgment of sentence affirmed in part and vacated in part. Case remanded for a new sentencing hearing to determine Appellant's eligibility of the RRRI program. Jurisdiction relinquished.

Judge Panella Joins the Memorandum.

Judge Shogan Notes Dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2017