2020 PA Super 183

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK JOSEPH BRADLEY | : | |
| | : | |
| Appellant | : | No. 1430 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 18, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003075-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK JOSEPH BRADLEY | : | |
| | : | |
| Appellant | : | No. 1432 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 18, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005893-2017

BEFORE: BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.*

OPINION BY BENDER, P.J.E.: **FILED AUGUST 07, 2020**

In these consolidated cases, Appellant, Patrick Joseph Bradley, appeals from the judgment of sentence of an aggregate term of 17 to 34 years' incarceration, imposed after he pled guilty to multiple counts of various theft-related offenses. On appeal, Appellant challenges the discretionary aspects of his sentence, as well as the legality of the court's decision to deem him

---

* Retired Senior Judge assigned to the Superior Court.

ineligible for the Recidivism Risk Reduction Incentive (RRRI) Act, 61 Pa.C.S. §§ 4501-4512. After careful review, we vacate Appellant's judgment of sentence and remand for the imposition of an RRRI minimum term.

The trial court provided a detailed summary of the facts and procedural history of Appellant's two underlying cases, as follows:

> Appellant … appeals his judgment of sentence imposed on April 18, 2019, following an open guilty plea in which [he] pled guilty to two (2) counts of dealing in proceeds of unlawful activities, two (2) counts of theft by unlawful taking or disposition, seventeen (17) counts of theft by deception - false impression, seventeen (17) counts of receiving stolen property, one (1) count of theft by failure to make required disposition of funds received, fourteen (14) counts of deceptive business practices, three (3) counts of misapplication of entrusted property and property of government or financial institutions, seventeen (17) counts of securing execution of documents by deception, and seven counts of unauthorized practice of law.[1]
>
> > [1] 18 Pa.C.S. §§ 5111(a)(2), 3921(a), 3922(a)(3), 3925(a), 3927(a), 4107(a)(6), 4113(a), 4114, and 42 Pa.C.S. § 2524(a), respectively.
>
> ***
>
> [Appellant] was a licensed Pennsylvania attorney who was admitted to the Pennsylvania Bar in 2006. He operated out of an office in Collegeville, PA[,] as a sole practitioner who specialized in the area of special needs and disability law. Between March 2013 and September 2016, [Appellant] victimized seventeen (17) individuals by either failing to complete work he contractually promised to perform, or by raiding funds as a trustee of special needs trusts which had been created for these individuals. [Appellant] subsequently used these funds to pay his own personal expenses, including personal mortgage payments and restaurant meals. [Appellant] committed many of these offenses while suspended from the practice of law.[3]
>
> > [3] [Appellant] was suspended from September 20, 2013[,] to November 19, 2013[,] and suspended indefinitely (disbarred on consent) from August 9, 2015[,] to the

present. From July 10, 2015 to August 8, 2015, [Appellant] was on temporary suspension in which he was prohibited from accepting any new retainers or engaging as an attorney in any new case or legal matter.

With respect to the special needs trusts, [Appellant] used the funds from the special needs trusts of six (6) individuals for his personal use. Karen Davidson, an individual suffering from a learning disability and depression, entered into a retainer agreement with [Appellant] on May 8, 2015[,] to prepare a special needs trust. Ms. Davidson funded the trust with $47,974 and [Appellant] made himself the sole trustee. [Appellant] removed the majority of these funds for his personal use and failed to pay Ms. Davidson's IRS tax balance[,] which resulted in multiple late fees. Ms. Davidson's trust loss totaled $37,747.65.

In June 2015, Charles Frock contracted [Appellant] to create a special needs trust for his son who is a disabled adult. On September 9, 2016, nine (9) days after [Appellant's] disbarment on consent from the disciplinary board, [Appellant] withdrew the entire amount of $2,997 from the trust and closed the account.

In 2014, Kim Putnam engaged [Appellant] to create a special needs trust for the sole benefit of her nephew, Lannie Hines. Soon after the creation of the trust, Mr. Hines was arrested in Berks County. [Appellant] never discussed using the trust funds to post bail, hire a private criminal attorney[,] or to seek and potentially fund treatment in lieu of imprisonment. Instead, [Appellant] used most of the money from Mr. Hines' trust during his imprisonment for his own personal use. Mr. Hines' trust loss totaled $11,514.

In 2015, Patricia Kaigler sought to protect her adult son, William Kaigler, by placing funds into a special needs trust and contracted attorney for this purpose. On July 14, 2015, the trust agreement was signed and the trust was funded with $64,000. [Appellant] failed to inform Ms. Kaigler that four (4) days prior to this date, the Pennsylvania Supreme Court issued an order which placed [Appellant] on temporary suspension. [Appellant] failed to notify Ms. Kaigler of this suspension. Only about $5,000 of the trust funds went to Mr. Kaigler's benefit. [Appellant] misappropriated the rest of the funds for his own personal use. Mr. Kaigler's trust loss totaled $57,896.36.

In the fall 2015, Joan Kozlowski engaged [Appellant] to create a special needs trust for her daughter, Anne Kozlowski, who

suffered from a serious mental health illness. [Appellant] was never a licensed attorney at any time during the existence of this trust. [Appellant] also used the funds from this account for personal expenses. Ms. Kozlowski's trust loss totaled $6,185.

In 2013, Kathleen Hoffman, an individual who suffers from a mental disability and substance abuse disorders, hired [Appellant] for the purpose of creating a special needs trust. Ms. Hoffman provided $41,690 to fund the trust. [Appellant] never created the trust, but instead began utilizing the funds for his own personal use. Although [Appellant] did use some of Ms. Hoffman's funds for her benefit, around twenty-five percent (25%) of these funds were misappropriated by [Appellant]. Ms. Hoffman's trust loss totaled $10,599.19. The total amount of misappropriated funds from these six trusts was $126,939.20.

In addition, [Appellant] victimized eleven (11) additional individuals by either not completing or only completing a portion of the work they had contracted him to perform. Beth Breslin, an individual confined to a wheelchair who requires constant care, hired [Appellant] on November 15, 2015[,] to assist her with finding a new assisted living facility and to convert her annuity into a special needs trust. Ms. Breslin provided [Appellant] with a $10,000 retainer, however [Appellant's] law license was suspended at this time and he never informed Ms. Breslin that he was unable to practice law. [Appellant] used this $10,000 payment to partially refund the balance of Kathleen Hoffman's funds[,] which he had unlawfully spent. Despite repeated contacts from Ms. Breslin, her sister and her social workers, [Appellant] failed to provide any of the promised services. Ms. Breslin's loss totaled $10,000.

On February 8, 2014, Rosemary Demarco signed an engagement letter with [Appellant] and provided him with a $1,000 retainer for the purpose of transferring her son's guardianship from New Jersey to Pennsylvania. Ms. Demarco's son, Paul Morris, is severely brain injured and lives in a group home. [Appellant] performed no work with respect to this guardianship transfer and eventually failed to respond to any of Ms. Demarco's phone calls or emails. Ms. Demarco's loss totaled $1,000.

On March 27, 2015, Michele Kostival signed an engagement letter with [Appellant] and provided him with a $1,592 retainer for the purpose of creating a guardianship for [her] special needs

son, Sean. [Appellant] failed to perform any work with respect to this guardianship and Ms. Kostival was forced to hire another attorney at additional cost. Ms. Kostival's loss totaled $1,592.

On June 24, 2015, Karol Rocco and her husband hired [Appellant] and provided him with a $1,842 retainer for the purpose of completing a guardianship petition for their son. [Appellant] filed a petition but did no further work on the matter. Ms. Rocco repeatedly attempted to contact [Appellant] by phone and email but [was] unsuccessful. In July 2016, the Roccos stopped by [Appellant's] law office and were informed that [Appellant] was suspended from practicing law. [Appellant] did not refund any of the money and instead spent the funds on personal debts. Ms. Rocco's loss totaled $1,842.

On March 19, 2013, Anna Shaw hired [Appellant] and provided him with $4,035 for the purpose of filing a petition for a special needs trust for her special needs daughter. Despite repeated letters, phone calls and visits to [Appellant's] law office by Ms. Shaw, [Appellant] never set up the special needs trust. Ms. Shaw never received any refund of her money and was forced to hire another attorney to complete the trust. Ms. Shaw's loss totaled $4,035.

On July 9, 2015, Mary Ann Smith and her Husband hired [Appellant] to file a guardianship petition on behalf of their adult son and provided him with a retainer in the amount of $2,358. On July 10, 2015, [Appellant] received official notice that his license to practice law was suspended indefinitely. Despite his suspended status, on July 14, 2015, [Appellant] cashed the retainer check. The Smiths unsuccessfully tried to contact [Appellant] over the course of the next year. [Appellant] never completed any work on the guardianship petition and only refunded $250 of the retainer, claiming the rest would come soon. Ms. Smith's loss totaled $2,108.

Loretta Balistocky and her husband hired [Appellant] to represent them in a matter regarding the trust account of their daughter, Anne Yaros. Ms. Balistocky provided [Appellant] with $17,000 to hold in escrow which was to be paid to the trust on behalf of Ms. Yarros at the conclusion of pending court matters. [Appellant] never performed any services for the Balistockys and never returned the $17,000. [Appellant] instead withdrew the $17,000 one day after depositing it into his main business account. Ms. Balistocky's loss totaled $17,000.

In March 2016, Felicita Velez retained [Appellant] to update legal work he had previously drafted for her adult special needs daughter. Ms. Velez provided [Appellant] with a check for $185, but [Appellant] failed to inform Ms. Velez that he was suspended from the practice of law at this time. [Appellant] failed to perform any work for Ms. Velez and her loss totaled $185.

In January 2016, Lisa Cordes' family retained [Appellant] to assist her with applying for county assistance. Ms. Cordes suffers from a cognitive disability. [Appellant] was suspended from the practice of law at this time, but accepted a $985 check for legal services. [Appellant] failed to inform Ms. Cordes' family that he was not an attorney in good standing. [Appellant] did not perform any work and instead deposited the Cordes' funds for his personal use. The Cordes' loss totaled $985.

On December 20, 2013, Ruth Landsman retained [Appellant] to handle a guardianship petition for Sarah Trout, who is diagnosed with, *inter alia*, severe intellectual disability, cerebral palsy and who is non[-]verbal and requires use of a wheel chair. Sarah's mother passed away in 2002 and Ms. Landsman was one of her closest friends. Ms. Landsman provided [Appellant] with a $1,000 retainer, but after several months, [Appellant] had not provided Ms. Landsman with any completed work product. [Appellant] ignored Ms. Landsman's repeated attempts to get in contact with him and Ms. Landsman was forced to hire a new attorney. [Appellant] never refunded any of the money and Ms. Landsman's loss totaled $1,000.

In 2016, John deGalvina retained [Appellant] to draft wills and a special needs trust for his son. [Appellant] failed to inform Mr. deGalvina that his law license was under suspension at this time. [Appellant] sent some error[-]ridden documents to Mr. deGalvina to review[,] but eventually stopped responding to Mr. deGalvina's calls and emails. Mr. deGalvina's loss totaled $1,185.

The total amount of funds [Appellant] misappropriated from these eleven (11) individuals totaled $40,932. When combined with the $126,939.20 which [Appellant] misappropriated from the six (6) special trust victims, the total amount of funds misappropriated is $167,871.20.

On January 14, 2019, the court began a bench trial in which the Commonwealth presented three (3) witnesses. On January 15, 2019, [Appellant] indicated he wished to plea[d] guilty and[,] following discussions with his attorney, [Appellant] entered an

open guilty plea…. On April 18, 2019, the court imposed an aggregate sentence of seventeen (17) to thirty-four (34) years of imprisonment…. The court determined [Appellant] was not an eligible offender for purposes of a[n RRRI minimum] sentence. The court also ordered [Appellant] to pay restitution in the amount of $167,871.20. On April 22, 2019, [Appellant] filed timely post-sentence motions[,] which the court denied on April 23, 2019.

On May 16, 2019, [Appellant] filed a timely notice of appeal [in each case, which this Court subsequently consolidated]. On May 23, 2019, the [trial] court issued an Order directing [Appellant] to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) (the "Concise Statement") within twenty-one (21) days. On June 7, 2019, [Appellant] requested a thirty (30) day extension to file his Concise Statement, which the court granted. On June 28, 2019, [Appellant] filed a timely Concise Statement.

Trial Court Opinion (TCO), 10/15/19, at 1-6 (one footnote omitted). The trial court thereafter filed its Rule 1925(a) opinion.

Herein, Appellant states three issues for our review, which we reorder for ease of disposition:

1. Is [Appellant's] aggregate sentence of 17-34 years['] incarceration] for non-violent crimes clearly unreasonable and manifestly excessive pursuant to 42 Pa.C.S. § 9781(c)(2)?

2. Is [Appellant's] aggregate sentence of 17-34 years['] incarceration] for non-violent crimes disproportionate pursuant to 42 Pa.C.S. § 9721(b)[,] when the sentencing court did not appropriately take into consideration [Appellant's] rehabilitative needs, including but not limited to the rehabilitative impact of being able to work to make restitution to the victims, and instead focused too heavily on the gravity of the offense as it relates to the impact on the life of the victim and the community?

3. Is the sentencing court's sentence illegal because it did not apply the RRRI calculation to [Appellant's] minimum sentence?

Appellant's Brief at 2.

Appellant's first two claims involve the discretionary aspects of his sentence, and will be addressed together.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **_Commonwealth v. Sierra_**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **_see_** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **_see_** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **_Commonwealth v. Evans_**, 901 A.2d 528, 533 (Pa. Super. 2006), _appeal denied_, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **_Commonwealth v. Mann_**, 820 A.2d 788, 794 (Pa. Super. 2003), _appeal denied_, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **_Commonwealth v. Paul_**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **_Sierra, supra_** at 912–13.

**_Commonwealth v. Griffin_**, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

**_Commonwealth v. Moury_**, 992 A.2d 162, 170 (Pa. Super. 2010)).

We begin by addressing whether Appellant has properly preserved his discretionary-aspects-of-sentencing issues for our review. The trial court

- 8 -

concludes that Appellant waived his claim that his sentence is manifestly excessive and clearly unreasonable by not specifically asserting that argument in his post-sentence motion or at the sentencing hearing. *See* TCO at 8. In his post-sentence motion, Appellant stated:

> 3. [Appellant] was in financial jeopardy during the time of his misdeeds, there is a clear link/time line between [Appellant's] financial issues and the theft.
>
> [4]. According to the PSI[, Appellant] never had any instance of violence.
>
> [5]. [Appellant] has a litany of health issues including:
>
> Allergic Conjunctivitis
>
> Herniated Disks
>
> Hiatal Hernia
>
> Hypertension
>
> Gastroesophageal Reflux Disease
>
> Eosinophilic Esophagitis
>
> Shatzki Ring
>
> As stated in [d]efense [c]ounsel's argument, [Appellant's] sole motivation was to provide housing for his family, [and] his actions were ill-advised but his original intentions were pure. A prevailing goal of the [c]ourt is to make the complainants whole, [and] that can only be achieved by giving [Appellant] an actual opportunity to make restitution.
>
> WHEREFORE, [Appellant] prays this Honorable Court modify the sentence imposed in accordance with the averments stated in the above[-]captioned matter.

Post-Sentence Motion, 4/22/19, at 1-2 (unnumbered).

Now, on appeal, Appellant claims that his sentence amounts to a *de facto* life term of incarceration, which is clearly excessive and unreasonable

considering his crimes are non-violent in nature. Even if we agreed with Appellant that his post-sentence motion indicated, generally, that he is challenging his sentence as excessive and unreasonable, his specific argument that his term of years constitutes a *de facto* life sentence was not mentioned, nor fairly suggested by, the language in his post-sentence motion. Rather, his motion indicated that his sentence is excessive given mitigating factors such as his health and 'pure intentions' in committing his non-violent offenses. We also observe that Appellant did not state his *de facto* life sentence claim in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b) Statement, 6/28/19, at 2 (stating only that Appellant's "aggregate sentence of 17-34 years for non-violent crimes is clearly unreasonable and manifestly excessive pursuant to 42 Pa.C.S. § 9781(c)(2)"). Consequently, the trial court did not address Appellant's *de-facto*-life-sentence claim in its opinion. For these reasons, Appellant has waived this claim for our review. **See Commonwealth v. Griffin**, 65 A.3d 932, 936 (Pa. Super. 2013) ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

We are also compelled to conclude that Appellant has waived his assertion that the court failed to consider his rehabilitative needs. He insists

that the court did not take into account his need "to get out and work and attempt to make restitution to his victims, not just to make the victims whole, but to impress upon [Appellant] the damage that he caused as part of his rehabilitation." Appellant's Brief at 35 (emphasis omitted). In support of this argument, he criticizes the following statement by the court in its opinion: "With respect to [Appellant's] claim that the court did not consider the rehabilitative impact of [Appellant's] being able to work to make restitution to the victims, the record indicates that several of the victims requested the court to impose a sentence of significant jail time." *Id.* at 34 (quoting TCO at 10-11). According to Appellant, "the sentencing court fails to appreciate … that Appellant's assertion is that the court has failed to address [Appellant's] rehabilitative needs. Restitution is not the state collecting money purely to remunerate victims. The purpose of restitution is *rehabilitation* of the defendant[,] since it is part of the defendant's criminal sentence." *Id.* at 35 (emphasis and citation omitted).

Appellant's criticism of the court is misplaced, and his argument herein is waived. Again, in his post-sentence motion, Appellant stated: "A prevailing goal of the [c]ourt is to make the complainants whole, [and] that can only be achieved by giving [Appellant] an actual opportunity to make restitution." Post-Sentence Motion at 2 (unnumbered). Not only did Appellant fail to mention the importance of restitution for *his* rehabilitation, but he explicitly stated that restitution was appropriate to make the *victims* whole. The court addressed this argument by noting, in its opinion, that its sentence met

- 11 -

several of the victims' request for a lengthy term of incarceration. Because Appellant failed to assert, in his post-sentence motion, that *his rehabilitative needs* required a shortened sentence so he could return to work to compensate the victims for the damage he caused, he has waived that argument for our review. **See Griffin**, **supra**.

In any event, even if Appellant had preserved his sentencing claims — and if we considered them as presenting substantial questions — we would conclude that he is not entitled to relief.

> Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The sentencing court enjoys broad discretion in part because it has the opportunity to make in-person observations of the defendant. The sentencing guidelines "inform" the trial court's sentencing decision rather than "cabin" it. Moreover, the sentencing court must fashion a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.[] § 9721(b).
>
> Where the sentencing court imposes a sentence within the guideline range, we must review to determine whether the trial court's sentence is "clearly unreasonable." 42 Pa.C.S.[] § 9781(c)(2). An "unreasonable" decision from the sentencing

- 12 -

court would be one that is "'irrational' or 'not guided by sound judgment.'"

The reasonableness inquiry is to be a "fluid" one, based in part on the factors set forth in § 9781(d) of the sentencing code:

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.[] § 9781(d)[.] In addition, a sentence may be unreasonable if the sentencing court fails to consider the factors set forth in § 9721(b). The Supreme Court anticipated that reversal of a trial court's decision as "unreasonable" would occur "infrequently."

***Commonwealth v. Dodge***, 957 A.2d 1198, 1200–01 (Pa. Super. 2008) (some citations omitted).

Here, we would first reject Appellant's claim that his term of 17 to 34 years' constitutes a *de facto* life sentence. Appellant incorrectly focuses his argument on the fact that he will be 81 years when he has finished serving his maximum term, which he contends greatly exceeds "[t]he average life expectancy for men in the United States … [of] 78.5 years…." Appellant's Brief at 30. However, as the Commonwealth observes, Appellant "will be eligible for parole as early as age [64], which is [14] years before he reaches the average life expectancy of [78.5 that] he cites in his brief." Commonwealth's Brief at 23 (citing Appellant's Brief at 30). We would agree

with the Commonwealth that Appellant's potential to be released on parole at 64 years old demonstrates that his sentence is not a *de facto* life term.

We would also reject Appellant's argument that the trial court failed to consider his rehabilitative needs and imposed a 'clearly unreasonable' term of incarceration by focusing only on the gravity of his offenses. Again, Appellant focuses on arguing that the court did not take into account the rehabilitative impact of his being able to work to make restitution to the victims. ***See*** Appellant's Brief at 35. However, as the Commonwealth aptly notes, Appellant "never proffered anything below, nor has he provided any information now on appeal, to explain ***how*** he plans to make money to repay his victims, or how doing so would help rehabilitate him." Commonwealth's Brief at 24 (emphasis in original).

Additionally, the trial court provided a detailed explanation for the sentence it imposed, stating:

> The court … had the benefit of a [pre-sentence investigation] report and considered all of the mitigating factors and information concerning [Appellant's] rehabilitative needs contained therein[,] in addition to any other factors required under 42 Pa.C.S.[] § 9721(b), such as the sentencing guidelines. (N.T. Sentencing, 4/18/19, at 50). The court also had the benefit of sentencing memorandum prepared by the defense and the Commonwealth. (***Id.***). Therefore, the record indicates the court was aware of relevant information regarding [Appellant's] character, including [his] rehabilitative needs, and weighed this information when it imposed [his] sentence. With respect to [Appellant's] claim that the court did not consider the rehabilitative impact of [Appellant's] being able to work to make restitution to the victims, the record indicates that several of the victims requested the court to impose a sentence of significant jail time. (***See generally*** [***id.***] at 57-79).

[Appellant] victimized special needs individuals who relied upon his services as an attorney. These individuals, either through testimony at sentencing, victim impact statements[,] or disciplinary complaints, all indicated how [Appellant's] actions had a severely negative impact on their lives. The court referenced these impacts and other factors in its reasoning for the sentence it imposed:

THE COURT: All right. [Appellant], you violated your oath of office as an attorney, your professional and fiduciary duties then you used your position to commit crimes against your clients. You were in a position of trust to these individuals and took advantage of that trust by misappropriating their funds for your own personal use.

This betrayal of trust is abhorrent. Lawyers are expected to advocate for and protect their clients' rights to the best of their ability. Unfortunately, due to your actions, these individuals had no one looking out for their best interests at critical junctures in their lives. Instead, they became innocent victims of your illicit schemes.

You were required to safeguard against any harm to your clients, but instead, you used your position of power, trust, and as a fiduciary for your own benefit to fill your own pockets and harm your clients.

You violated the sanctity of the attorney-client relationship, an association which our legal system critically depends upon. Your actions caused people to question whether or not they can trust attorneys. If people have doubts about the attorney client relationship and the value of attorneys, our system cannot function.

You had a greater fiduciary duty since many of your clients had special needs and were in perhaps in need of an even higher level of protection than other clients. You took advantage of those people. You used their money in their bank accounts like it was your own ATM. Taking from people who needed special needs trusts and/or from their trusts demonstrates a level of depravity not even seen with hardened criminals.

You lied and deceived your clients. They retained you believing you were licensed to practice law. In many instances, you were not. You were suspended from

- 15 -

practicing law, and despite an order to notify your clients of your suspension, you did the opposite and lied and deceived potential clients into retaining you as an attorney.

You were disloyal to your clients and failed to protect their interests. You stole from them for your own personal gain. You had 17 separate victims and their families. To you, the money you stole may not have been significant. However, to many of them, even a small amount was their life savings. They needed that money to survive.

In addition to stealing money from them, you stole their sense of security, their trust, and you caused them unnecessary stress and hardships. You changed their lives forever. Obviously[,] it was not for the better.

You are no different [from] a hardened thief, robber or burglar. Actually, I think you're worse. Because of your position of trust, your lying and deception, they handed you their money never expecting you to steal it from them.

Each of your 17 victims warrants a punishment for your conduct. If I were to do otherwise, then you would get a [volume] discount for multiple crimes. They are all victims. As a result of you - as a result, you should be sentenced for all the crimes against them. Your conduct warrants consecutive sentences.

There is nothing redeeming about how you conducted yourself. You are a convicted felon and warrant the lengthy period of incarceration in a state correctional facility. You will have many years in a state correctional facility to gain remorse. Hopefully[,] you will start by writing letters of apology to your victims.

(*Id.* at 92-95). Thus, in light of the serious nature of [Appellant]'s crimes and his status as a fiduciary/attorney for his victims, [Appellant] cannot claim that his sentence was so manifestly excessive or clearly unreasonable as to constitute an unduly harsh punishment.

TCO at 10-13 (some citations omitted).

We agree with the court that it "appropriately considered all of the factors set forth in 42 Pa.C.S.[] § 9721(b) and did not abuse its discretion when it imposed an aggregate sentence of seventeen (17) to thirty-four (34) years of imprisonment." ***Id.*** at 13. It is clear that the court considered Appellant's needs and weighed them against the gravity of his crimes and the impact on his victims. The court imposed standard-range sentences and ran them consecutively to punish Appellant for each of the seventeen individuals he victimized. It provided a lengthy explanation for this sentencing decision. Therefore, even had Appellant preserved his sentencing claims, we would conclude that his sentence of 17 to 34 years' imprisonment is not clearly unreasonable, excessive, or an abuse of the court's discretion. Consequently, Appellant's first and second issues are meritless.

Appellant next challenges the trial court's determination that he is not RRRI eligible. "[A] defendant's challenge relative to the failure to apply a RRRI minimum [is] a non-waivable illegal sentencing claim." ***Commonwealth v. Tobin***, 89 A.3d 663, 669 (Pa. Super. 2014) (citation omitted). "The RRRI Act permits offenders who exhibit good behavior and who complete rehabilitative programs in prison to be eligible for reduced sentences." ***Commonwealth v. Hansley***, 47 A.3d 1180, 1186 (Pa. 2012). The Act defines "eligible offender," in relevant part, as follows:

> **§ 4503. Definitions**
>
> The following words and phrases when used in this chapter shall have the meanings given to them in this section unless the context clearly indicates otherwise:

* * *

**"Eligible offender."** A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets all of the following eligibility requirements:

(1) Does not demonstrate a history of present or past violent behavior.

61 Pa.C.S. § 4503(1).

Here, the trial court concluded that Appellant has a 'history of past violent behavior' because he has a single conviction for disorderly conduct under 18 Pa.C.S. § 5503(a)(1), which states:

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior[.]

Appellant contends that the court's determination that he is not RRRI eligible is illegal because disorderly conduct under section 5503(a)(1) is not a crime of violence. He focuses on the legislature's inclusion of the phrase, 'tumultuous behavior,' contending that the plain meaning of 'tumultuous' (which is not defined in the statute) does not require violence, but only the "making [of] an uproar or loud, confused noise," or a person's acting "excited, confused or disorderly." Appellant's Brief at 26 (citation omitted). Because, according to Appellant, the offense of disorderly conduct under section 5503(a)(1) can be committed without any violent act, his conviction for that offense cannot be considered violent behavior for RRRI eligibility purposes.

Alternatively, Appellant argues that, even if disorderly conduct is violent behavior, his single conviction for that offense in 1993 does not amount to a history of violence. In support of this argument, Appellant relies primarily on our Supreme Court's holding in **Commonwealth v. Cullen-Doyle**, 164 A.3d 1239 (Pa. 2017). There, the Court examined whether Cullen-Doyle's present, single conviction for burglary constituted a history of present or past violent behavior, thus rendering the defendant ineligible for the RRRI program. The Court first found that "the salient aspect of the statute, referring to a 'history of present or past violent behavior,' ... to be materially ambiguous, thereby implicating recourse to the rules of statutory construction." **Id.** at 1242 (citation and footnote omitted). The Court next evaluated the legislative history of the RRRI Act, observing that its stated purpose is to "encourage eligible offenders … to participate in … programs … that reduce the likelihood of recidivism." **Id.** (quoting 61 Pa.C.S. § 4504(b)). The Court acknowledged that,

> [a]lthough the enactment does not contain any language expressly relating to first-time offenders or penalizing recidivism as such, a commonly accepted corollary to the Act's express purpose of reducing recidivism is that first-time offenders are usually more amenable to reform than inmates who have persisted in criminal conduct. Indeed, the Pennsylvania Commission on Sentencing…, which was charged with identifying important factors affecting recidivism, found that "[t]he most consistent predictors of recidivism were age and number of prior arrests[,]" and that "offenders with a greater number of prior arrests, were more likely to recidivate."

**Id.** at 1242-43 (footnotes and citations omitted).

The ***Cullen-Doyle*** Court then concluded that the legislature's use of the word "history" demonstrated its "intent to render ineligible with 'an established record or pattern' of violent behavior." ***Id.*** at 1243. It rejected "imposing eligibility requirements that are so stringent that a large number of individuals who could potentially reform through participation in RRRI programming will be prevented from participating, given that a single instance of 'violence,' broadly construed, would be disqualifying." ***Id.*** Additionally, noting "the statutory-interpretation principle that 'the inclusion of specific matters in a statute implies the exclusion of other matters,'" the Court observed that Cullen-Doyle's burglary conviction was not one of the statutorily-enumerated offenses that automatically disqualifies a defendant from the RRRI program. ***Id.*** Finally, the Court reasoned that "the rule of lenity bolsters the conclusion that the single, present conviction for a violent crime does not constitute a history of violent behavior." ***Id.*** at 1244 (citing, *inter alia*, 1 Pa.C.S. § 1928(b)(1) (indicating that penal statutes are to be strictly construed)).

Appellant acknowledges that "[b]ecause the crime in ***Cullen-Doyle*** was the present conviction, it is not entirely identical to the present case[,] in which the single conviction for an allegedly violent crime preceded the instant non-violent crime by over twenty years." Appellant's Brief at 29. Nevertheless, he insists that "the reasoning of ***Cullen-Doyle*** applies with equal force." ***Id.*** He observes that in ***Commonwealth v. Selby***, No. 1299 WDA 2018, 2019 WL 2184840 (Pa. Super. May 21, 2019), this Court found

"that when the defendant had only a single prior conviction for resisting arrest, the reasoning in *Cullen-Doyle* dictated that he be permitted to participate in RRRI." Appellant's Brief at 29.[1] Thus, Appellant avers that, as in *Selby*, we should rely on *Cullen-Doyle* to conclude that his single conviction for disorderly conduct does not make him ineligible for the RRRI program.

We find Appellant's argument convincing. In *Selby*, the defendant was deemed ineligible for the RRRI program, at his sentencing for technical violations of his parole, based on the fact that he had a single prior conviction for resisting arrest, which constitutes a violent crime. No. 1299 WDA 2018, at *2. In concluding that these circumstances did not result in RRRI ineligibility, we stated:

> We are cognizant that the specific holding of *Cullen-Doyle* – that a single **present** conviction does not equate to a history of violent behavior – does not govern the outcome in the instant case. *Id.* at 1244. Unlike *Cullen-Doyle*, the crime of violence here is not one of the present crimes for which Appellant is being re-sentenced; in this case, it was a single prior conviction for resisting arrest, which, according to the trial court, rendered Appellant ineligible for an RRRI sentence. Nonetheless, this Court is persuaded by the reasoning in *Cullen-Doyle* that the language of the RRRI statute is ambiguous; that the word history refers to "an established record of or pattern of past or present violent behavior;" that the "Legislature sought to offer greater reform opportunities for first-time offenders than for repeat offenders;" that construing the statute narrowly would disqualify too many

---

[1] Pennsylvania Rule of Appellate Procedure 126(b) provides that non-precedential decisions (referring to unpublished, memorandum decisions of the Superior Court) filed after May 1, 2019, may be cited for their persuasive value.

individuals based upon a mere "single instance of violence;" that all crimes of violence should not be *per se* disqualifying; and that the rule of lenity means the statute should be construed in favor of those seeking admission to the program. *Id.* at 1241-44. In light of these considerations, we conclude that when the current crime a defendant is being sentenced on is not a crime of violence and the defendant has only a single prior conviction for a non-enumerated crime of violence, that single prior conviction does not constitute a history of past violent behavior and should not, by itself, disqualify a defendant from participating in the RRRI program.

*Id.* at *4.

We find our decision in **Selby** to be a sound application of the rationale in **Cullen-Doyle**. Thus, we likewise conclude that when a defendant is being sentenced for a non-violent crime, his or her single prior conviction for a non-enumerated crime of violence does not alone constitute a 'history of past violent behavior' so as to trigger ineligibility for the RRRI program. Applying that holding in the present case, we conclude that, even if disorderly conduct under section 18 Pa.C.S. § 5503(a)(1) is a crime of violence, Appellant's single prior conviction for that non-enumerated offense does not disqualify him from participating in the RRRI program while serving his present sentence for non-violent crimes. Therefore, we vacate his judgment of sentence and remand for application of an RRRI minimum sentence.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/20