**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT EARL SARLOUIS JR. | : | |
| | : | |
| Appellant | : | No. 1072 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 29, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004033-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT EARL SARLOUIS | : | |
| | : | |
| Appellant | : | No. 1073 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 29, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003428-2021

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: September 4, 2025**

Albert Earl Sarlouis ("Sarlouis") appeals from the judgments of sentence imposed following the revocation of his probation at two dockets. We affirm.

At docket 3428-2021 ("docket 3428"), in September 2021, Sarlouis became engaged in a verbal altercation with his girlfriend, Heather Krouse ("Krouse"), during which he shoved her to the ground, grabbed her by the hand, and bent her right thumb backward toward her forearm, causing injuries

to her hand and a torn tendon in her thumb. Police charged Sarlouis at this docket with aggravated assault, simple assault, and harassment.

At docket 4033-2022 ("docket 4033"), in September 2022, Sarlouis slammed Krouse's head into the interior windshield of a vehicle, causing the windshield to crack, punched her in the head, and then spun the vehicle as she was attempting to get out, causing her to fall and injure her leg. Police charged Sarlouis at this docket with aggravated assault, simple assault, and recklessly endangering another person ("REAP").

Police had previously charged Sarlouis in 2020 with simple assault and terroristic threats at docket 2187-2020 ("docket 2187"), also in relation to offenses he committed against Krouse.[1] From what we can glean from the record, these charges stemmed from Sarlouis punching Krouse in the head, pulling her hair, and threatening to murder her. *See* N.T., 8/25/23, at 28-29. Additionally, when Sarlouis committed these offenses against Krouse at docket 2187, he was on bond at a fourth docket for charges that he strangled her. *See id*. at 35.

On January 4, 2023, Sarlouis entered negotiated guilty pleas at dockets 3428, 4033, and 2187, and the trial court sentenced him that same day. At docket 4033, the trial court sentenced Sarlouis to eleven and one-half months

---

[1] No appeal from docket 2187-2020 is presently before this Court, and the factual allegations underlying those charges are not contained in the records before us.

- 2 -

to twenty-three months in prison for simple assault, one year of concurrent probation for REAP,[2] and ordered him to have no direct or indirect contact with Krouse.[3]  At docket 3428, the trial court sentenced Sarlouis to six to twenty-three months in prison for simple assault,[4] and ordered him to have no direct or indirect contact with Krouse.[5]  The sentence at docket 3428 was to be served concurrently to the sentence at docket 4033.  At docket 2187, the trial court sentenced Sarlouis six to twenty-three months in prison for terroristic threats, imposed a concurrent term of six to twenty-three months in prison for simple assault, and ordered him to have no direct or indirect contact with Krouse.  The sentence at docket 2187 was to be served concurrently to the sentence at docket 4033.

On August 14, 2023, the trial court conducted a revocation hearing at docket 2187 only.  Krouse requested that the "no contact" condition be modified to "no abusive contact" so that Sarlouis would be permitted to come and get his things from her residence.  *See* N.T., 8/25/23, at 13.  Assistant District Attorney Jim Lazar ("ADA Lazar"), who had prosecuted that case against Sarlouis, was present in the courtroom and expressed his concern

---

[2] *See* 18 Pa.C.S.A. §§ 2701(a)(1), 2705.

[3] The Commonwealth dismissed the charge for aggravated assault.

[4] *See* 18 Pa.C.S.A. § 2701(a)(1).

[5] The Commonwealth dismissed the charges for aggravated assault and harassment.

about Krouse's request, as did the trial court judge, who admonished Sarlouis that he was to have no abusive contact with Krouse. *See id*. Notably, although the trial court made the requested change at docket 2187, the condition that Sarlouis have "no direct or indirect contact" with Krouse, remained in effect at dockets 4033 and 3428.

On August 17, 2023, Sarlouis was released from prison and placed on parole. He reported to the probation department on August 18, 2023, for a meeting at which the probation department advised Sarlouis that, although the condition of "no contact" with Krouse had been changed to "no abusive contact" at docket 2187, the other two dockets still contained the "no direct or indirect contact" condition, which banned him from having any contact with her. *See* N.T., 9/8/23, at 3; *see also* N.T., 8/25/23, at 4. Sarlouis discussed this issue with his attorney, who was to submit court orders to get all "no direct or indirect contact" provisions changed to "no abusive contact." *See* N.T., 9/8/23, at 3. At the conclusion of the meeting, the probation office told Sarlouis "not to have contact with [Krouse] until all of this was determined." *See id*. at 3-4; *see also* N.T., 8/25/23, at 4-5. Sarlouis called the probation office on August 21, 2023, asking if the changes had been made, but he was told by the probation office that it had not yet received any court order directing that the language be changed at the other two dockets, and the probation office told Sarlouis that he was to have no contact with Krouse. *See* N.T., 8/25/23, at 5.

On August 23, 2023, ADA Lazar contacted Rachel Grabiak ("Grabiak") at the probation office. *Id*. at 5. ADA Lazar requested a warrant for Sarlouis based on concerning contact he had with Krouse. *Id*. Grabiak explained that the office's general practice is not to act in response to one phone call, so she contacted the trial court to determine whether they should move forward. *See* N.T., 9/8/23, at 4. Later that same day, the probation office filed a petition to revoke Sarlouis' parole due to his alleged violation of his parole terms and conditions. The petition alleged that Sarlouis had abusive contact with Krouse on August 23, 2023. Additionally, the petition alleged that Sarlouis was ordered to pay costs, fines, and fees of $1,543.30, and had not yet paid anything toward the outstanding balance. The trial court issued a bench warrant/detainer for Sarlouis due to the alleged violations and its concern for Krouse.

On August 25, 2023, Krouse transported Sarlouis to the probation office, which requested an expedited bench warrant hearing. That same day, Honorable Timothy Krieger ("Judge Krieger") conducted an expedited bench warrant hearing, at which he heard testimony from ADA Lazar regarding a phone call he received from Krouse in which it appeared clear to him that an incident was occurring in her home, and she was fearful of Sarlouis. By way of background, ADA Lazar testified that he prosecuted Sarlouis for the charges at docket 2187, and that Sarlouis committed the offenses at dockets 3428 and 4033 while he was on bond for the charges at docket 2187. *See* N.T.,

8/25/23, at 11-12. ADA Lazar indicated that, over the course of the three proceedings, he had numerous conversations with Krouse, who vacillated between being afraid of Sarlouis and not knowing whether she wanted to cut all ties with him. *See id*. at 12. Indeed, ADA Lazar indicated that Krouse had called him whispering and concerned for her safety on numerous occasions while the charges in the cases were pending. *See* N.T., 9/8/23, at 13.

According to ADA Lazar, he received a phone call on the morning of August 23, 2023, from a phone number that he did not recognize. *See* N.T., 8/25/23, at 13. When he answered, no one responded, but ADA Lazar could hear a man in the background shouting at someone to hang up the phone. *See id*. After a few minutes of ADA Lazar saying hello, the phone went dead. *Id*. at 13-14. ADA Lazar called the number back and got Krouse's voicemail. *See id*. at 14. He also confirmed that it was Krouse's phone number by looking her up in the victim database. *See id*. He left a message asking Krouse to call him back. *See id*. ADA Lazar relayed that Krouse called him back a little later that morning and, once again, all ADA could hear was Sarlouis, who was shouting repeatedly at Krouse about the theft of five thousand dollars. *See id*. at 14. Eventually, "Krouse identified herself and was whispering and was . . . obviously crying and upset." *Id*. ADA Lazar asked her if Sarlouis was with her, and she confirmed that he was. *See id*. at 15. ADA Lazar asked Krouse questions to determine whether Sarlouis was abusing her, but she did not answer his questions. *See id*. Because ADA

Lazar could hear that Sarlouis was standing right next to Krouse, he believed that there was abuse, but that Krouse could not report it due to Sarlouis' presence. *See id*. Krouse told ADA Lazar that "she wanted the condition changed." *Id*. at 17. Based on her demeanor in the phone call, ADA Lazar took this to mean that Krouse was asking him to change the conditions to "no contact" at all three cases. *See id*. ADA Lazar told Krouse that he was going to call someone to have them come to check on her. *See id*. at 15. Krouse responded, "okay," before she hung up. *Id*.

When police arrived at the residence, Krouse and Sarluois were gone. *See id*. at 15-16. However, Krouse's two sons (ages nine and seventeen) were present and informed police that Sarlouis was at the residence that morning with their mother, and that they witnessed Sarlouis pushing her. *See id*. at 16. ADA Lazar stated that the aggression that Sarlouis has shown to Krouse "has been increasingly dangerous and increasingly violent." *Id*. ADA Lazar was concerned that Krouse was in immediate danger and called her repeatedly, but received no response from her. *See id*. at 16-17. He then called the probation office to report the situation. *See id*. at 17.

Krouse took the stand and testified that Sarlouis had merely been shouting at her, but there was no physical abuse. *See id*. at 24. Judge Krieger expressed disbelief of Krouse, and found her testimony that Sarlouis had not been abusive to her was not credible. At the conclusion of the hearing,

the trial court ordered that Sarlouis remain incarcerated until a revocation hearing could be scheduled.

On September 8, 2023, Honorable Megan Bilik-DeFazio ("Judge Bilik-DeFazio") conducted a revocation hearing at which Grabiak provided the court with an update regarding Sarlouis' cases and the alleged violations. *See* N.T., 9/8/23, at 3-5. Krouse again testified that Sarlouis had not engaged in abusive contact with her. *See id*. at 6-10. ADA Lazar provided testimony by phone about his communications with Krouse, as he had previously detailed them at the hearing on August 25, 2023. *Id*. at 11-16. Judge Bilik-DeFazio indicated her belief that Sarlouis was abusive and that Krouse was "petrified and afraid to tell us what happened that day." *Id*. at 18-19.

The court then permitted Sarlouis to speak. He initially claimed that he did not know that he was not permitted to be at Krouse's residence on August 23, 2023. *See id*. at 19. However, upon questioning by Judge Bilik-DeFazio, Sarlouis conceded that he had been specifically warned by the probation office on August 18, 2023, that he was to have no contact with Krouse. *See id*. Nonetheless, Sarlouis claimed that Krouse had either hacked into or taken $5,000 from his bank account. *Id*. at 20. According to Sarlouis, "I don't care if she takes money out for bills . . . but there's a lot of money missing. The bills didn't come up to $5,000." *Id*. He explained that he "stopped to pick [Krouse] up so we could go to the bank and get the money situated." *Id*.

Sarlouis specifically acknowledged, "*I know I wasn't supposed to have contact*, but that's a lot of money." *Id*. (emphasis added).

The trial court then determined that Sarlouis was in violation of his parole, and that he was a danger to Krouse whether or not she was willing to admit it. *See id*. at 20. Accordingly, the court found Sarlouis in violation of his parole. At docket 4033, the court resentenced Sarlouis to the balance of the maximum sentence for simple assault, revoked his probation for REAP, and imposed a sentence of to 1-2 years in prison for REAP to run consecutively to the sentence for simple assault. *Id*. At docket 3428, the trial court resentenced Sarlouis to the balance of the maximum sentence for simple assault.

Sarlouis filed a post-sentence motion on October 18, 2023, which was beyond the ten-day period for filing such motions. However, the trial court accepted the post-sentence motion as timely filed on September 18, 2023, due to a clerical error. On October 30, 2023, the trial court denied the post-sentence motion. This timely appeal followed.[6] Both Sarlouis and the trial court complied with Pa.R.A.P. 1925.

Sarlouis raises the following issues for our review:

---

[6] Sarlouis' counsel initially filed an appeal but then withdrew the appeal. Sarlouis thereafter filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), *see* 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights. The PCRA court granted the petition and reinstated Sarlouis' direct appeal rights *nunc pro tunc* at dockets 3428 and 4033.

- 9 -

1. The weight of the evidence failed to demonstrate that [Sarlouis] violated the court's order preventing "abusive contact" with the victim.

2. The court erred in denying [Sarlouis'] post[-]sentence motions.

3. The court abused its discretion by sentencing [Sarlouis] to [one to two] years of confinement with the Department of Corrections over non-abusive contact with the victim.

Sarlouis' Brief at 4 (unnecessary capitalization omitted, issues reordered for ease of disposition).

In his first two issues, Sarlouis argues that the trial court's determination that he violated his parole was against the weight of the evidence. This Court has previously explained, however, that weight-of-the-evidence claims involving conflicts in testimony and credibility determinations are unavailing in an appeal from probation revocation:

> We find no authority for appellant's assumption that a challenge to the weight of the evidence may properly be entertained on appeal from parole revocation by the trial court. It is clear that such a challenge is not available from parole revocations entered by the Pennsylvania Board of Probation and Parole.

*Commonwealth v. McDermott*, 547 A.2d 1236, 1246 (Pa. Super. 1988) (citations omitted). In the wake of *McDermott*, this Court has held that a weight-of-the-evidence challenge to a sentence imposed following the revocation of probation or parole is unreviewable. *See Commonwealth v. Obert*, 221 A.3d 1273 (Pa. Super. 2019) (unpublished memorandum) (holding that a challenge to the weight of the evidence is not cognizable for an appeal from the revocation of probation); *Commonwealth v. Medley*,

- 10 -

225 A.3d 1162 (Pa. Super. 2019) (unpublished memorandum) (same); ***Commonwealth v. Walters***, 131 A.3d 101 (Pa. Super. 2015) (unpublished memorandum) (noting that even if appellant had not waived his weight-of-the-evidence challenge to the sentence imposed following the revocation of his probation, such a challenge is untenable in the context of a probation revocation because the standards for a violation of probation hearing are markedly different from a trial, as a violation of probation hearing takes place without a jury, with a lower burden of proof, and with fewer due process protections); ***Commonwealth v. Borochaner***, 190 A.3d 693 (Pa. Super. 2018) (unpublished memorandum) (explaining that the Commonwealth need only establish a probation violation by a preponderance of the evidence, which is the lowest burden of proof in the administration of justice and is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor).[7] Thus, as Sarlouis' weight-of-the-evidence challenge is unreviewable, his first issue merits no relief.

In his second issue, Sarlouis contends that the trial court abused its discretion in imposing its revocation sentences. This issue presents a challenge to the discretionary aspects of Sarlouis' sentences from which there is no automatic right to appeal. ***See Commonwealth v. Akhmedov***, 216

---

[7] Pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

A.3d 307, 328 (Pa. Super. 2019) (*en banc*).  Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by:

> (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Id*. at 328 (citation omitted).

Furthermore, our determination as to whether the appellant has raised a substantial question is limited to our review of the Rule 2119(f) statement. *See Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002) (holding that a substantial question exists only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the sentencing code or a particular fundamental norm underlying the sentencing process). The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004).

A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law." *Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa. Super. 2005) (citation omitted).  We are unable to discern a substantial question where a Rule 2119(f) statement consists only of boilerplate language of sentencing

requirements without applying those principles to the challenged sentence. *See Commonwealth v. Gibbs*, 981 A.2d 274, 283 (Pa. Super. 2009). Bald assertions of sentencing errors do not suffice. *See Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Ahmad*, 961 A.2d 884, 886-87 (Pa. Super. 2008) (*quoting Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005)).

Here, the record demonstrates that Sarlouis filed a timely notice of appeal. In his post-sentence motion, Sarlouis discussed at length the fact that the "no contact" condition at docket 2187 had been changed to "no abusive contact," which led him to believe that he was permitted to have contact with Krouse despite the fact that the orders at dockets 3428 and 4033 still indicated that he have "no contact" with her. *See* Post-Sentence Motion, 10/19/23, at unnumbered 3. Therein, Sarlouis averred that "the judge erred by not having all three orders reflect the changed circumstances which frustrated [Sarlouis'] understanding of his obligations to the court," and the trial court further "erred by sentencing [Sarlouis] when the court had erred in amending only one of the three orders to state 'no abusive contact' instead of 'no contact.'" *Id*. at unnumbered 3-4 (unnecessary capitalization omitted). Sarlouis then provided

the following generalized assertion regarding his discretionary sentencing claim: "The court abused its discretion in sentencing [Sarlouis] to 1-2 years DOC over non-abusive contact with Krouse." *Id*. at unnumbered 4 (unnecessary capitalization omitted). Sarlouis made no other assertions regarding his sentences in the post-sentence motion. Subsequently, upon reinstatement of his direct appeal rights *nunc pro tunc*, Sarlouis filed a timely notice of appeal from the denial of his post-sentence motion.

Additionally, our review of Sarlouis' brief reveals that he included two separate Rule 2119(f) statements. *See* Sarlouis' Brief at 5-7, 18-21.[8] However, our review of Sarlouis' first Rule 2119(f) statement discloses no substantial question. Instead, in his first Rule 2119(f) statement, Sarlouis merely provides a summary of the procedural history of the three cases, noting that the "no contact" provision at docket 2187 had been changed to "no abusive contact," which implied to Sarlouis that he would be able to contact Krouse. *See* Sarlouis' Brief at 5-7.

In his second Rule 2119(f) statement, Sarlouis provides boilerplate legal standards before arguing, once again, that the "no contact" provision at docket 2187 had been changed to "no abusive contact," which implied to him that he would be able to contact Krouse despite the fact that the "no contact"

---

[8] We note that Sarlouis incorrectly stated that his statements are submitted pursuant to Rule 2116(f), rather than pursuant to Rule 2119(f).

language in the orders at dockets 3429 and 4033 had not been changed. *See*

*id*. at 20. Specifically, Sarlouis stated:

> On October 18, 2023, post sentence motions were filed at both dockets. [Sarlouis] asserted that the sentencing court abused its discretion by sentencing [him] to 1-2 years of confinement with the Department of Corrections over "non abusive" contact with the victim. By altering the order from a "no contact" to a "no abusive contact" the court implied to [Sarlouis] that he'd be able to contact the victim. [Sarlouis] requested that the sentencing court vacate the sentences. The sentencing court erred by not having all three orders reflect the changed circumstance, which frustrated [Sarlouis'] understanding of his obligations to the court. Furthermore, the sentencing court erred by sentencing [him] when the court had erred in amending only one of the three orders to state "no abusive contact" instead of "no contact." The court made it difficult for [Sarlouis] to comply by modifying only a single order.

*Id*. at 20-21 (unnecessary capitalization omitted).

Following this argument, Sarlouis summarily asserts that that this Court should grant review of his discretionary sentencing claim because the trial court: (1) "failed to outline its reasoning for imposing the maximum sentence in any form;" (2) "imposing the maximum sentences serves no legitimate purpose;" and (3) "the probation revocation sentence was manifestly unjust." Sarlouis' Brief at 21 (unnecessary capitalization omitted).

Initially, we note that these particular averments were not raised by Sarlouis at sentencing or in his post-sentence motion. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal; *see also Commonwealth v. Bradley*, 237 A.3d 1131, 1138 (Pa. Super. 2020) (holding that objections to the

discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed); ***Commonwealth v. Tejada***, 107 A.3d 788, 799 (Pa. Super. 2015) (observing the trial court must be given the opportunity to reconsider its sentence either at sentencing or in a post-sentence motion). Instead, in his post-sentence motion, Sarlouis generally averred that the trial court abused its discretion by imposing a one-to-two-year prison sentence for non-abusive contact with Krouse. The motion certainly did not state a challenge to the discretionary aspects of sentencing "with specificity and particularity," as is required by Pa.R.Crim.P. 720(B)(1)(a). Thus, as these specific assertions were not raised in the post-sentence motion, we deem them waived.[9]

Moreover, based on Sarlouis' Rule 2119(f) statements, we conclude that he has failed to raise a substantial question. As explained above, our inquiry must focus on the ***reasons*** for which the appeal is sought, in contrast to the ***facts*** underlying the appeal. ***See Ahmad***, 961 A.2d at 886-87. Here, Sarlouis' discretionary sentencing claim is premised entirely on ***facts***

_____

[9] We further note that Sarlouis did not raise these assertions in his Rule 1925(b) concise statement. Instead, Sarlouis repeated therein the same vague claim regarding his discretionary sentencing challenge: "The court abused its discretion by imposing a sentence of 1-2 years in the Department of Corrections over non-abusive contact with Krouse." Concise Statement, 9/20/24, at unnumbered 4; ***see also*** Pa.R.A.P. 1925(b)(4)(vii) (proving that issues not included in the concise statement are waived); ***Commonwealth v. Lemon***, 804 A.2d 34, 36-37 (Pa. Super. 2002) (holding that waiver results from a Rule 1925(b) statement's omission of the specific theory raised on appeal).

- 16 -

underlying the appeal. Indeed, the premise of his petition for permission to appeal is that the trial court erred in not changing the "no contact" condition at dockets 3428 and 4033 to "no abusive contact," and that the trial court erred in finding him in violation of his parole because the amended order at docket 2187 implied to Sarlouis that he could have contact with Krouse. These arguments implicate the trial court's non-sentencing functions, such as amending parole orders and assessing whether a defendant's parole should be revoked. To be sure, these averments do not articulate the manner in which the sentences imposed at dockets 3428 and 4033 violate either a specific provision of the sentencing code or a particular fundamental norm underlying the sentencing process. Thus, as we conclude that Sarlouis has not raised a substantial question for our review, he has failed to invoke this Court's jurisdiction to review his sentences.

Judgments of sentence affirmed.

Judge Nichols joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

- 17 -

J-S24044-25

DATE: 9/4/2025