J-S13009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAQUAN WOODEN | : | |
| | : | |
| Appellant | : | No. 2502 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000521-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAQUAN WOODEN | : | |
| | : | |
| Appellant | : | No. 2504 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000522-2020

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 24, 2023**

Appellant Jaquan Wooden appeals from the judgment of sentence entered following his conviction for third-degree murder and related offenses. Appellant contends that the trial court abused its discretion and imposed an

---

[*] Former Justice specially assigned to the Superior Court.

excessive aggregate sentence without adequate consideration of the applicable sentencing factors. After review, we affirm.

The trial court summarized the factual background of this matter as follows:

> At trial the Commonwealth presented the testimony of Philadelphia police officers Padraic Feeney, Jerald Furey, Jacqueline Brennan, Christine Hilbert, and Paul Ward; Philadelphia police detectives Paul Scarinci, Thorsten Lucke, Peter Marrero, Jr., and Danielle Slobodian; Philadelphia police sergeant Matthew Lowe; Philadelphia chief medical examiner Dr. Albert Chu; civilian Milton Abreu; and, by stipulation, forensic scientists Lissette Vega and Tarah Helsel. [Appellant] presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following:
>
> At approximately 7:57 p.m., on November 19, 2019, Jose Espinosa-Molina was walking down the 6100 block of Castor Avenue in Philadelphia. After Espinosa-Molina crossed the street, [Appellant] drove up behind Espinosa-Molina in a black vehicle. As the vehicle approached Espinosa-Molina, [Appellant], as well as other individuals in the vehicle, fired multiple gunshots at Espinosa-Molina. Espinosa-Molina was struck in the back of the head by a .380 caliber bullet and collapsed onto the ground.
>
> The police arrived at approximately 8:04 p.m. and found Espinosa-Molina laying on the ground and unresponsive. The police immediately transported Espinosa-Molina to Aria Torresdale Hospital, where he was pronounced dead two days later. Dr. Chu, the chief medical examiner, concluded that the death was a homicide caused by complications of a gunshot wound to the head.
>
> The police recovered four fired cartridge casings ("FCCs") from the scene, as well as two bullet fragments. One of the FCCs was a .380 caliber, while the other three were all 9mm.
>
> Two days after the Espinosa-Molina shooting, on November 21, 2019, at approximately 8:21 p.m., [Appellant] was standing with a group of individuals outside the Abreu Super Deli on the corner of Castor Avenue and Benner Street. [Appellant's] black Honda Accord was parked outside of the deli, and [Appellant] was

wearing dark clothing, a baseball hat, and yellow sneakers. A vehicle approached the group and fired gunshots. [Appellant] then ran down the street chasing the vehicle while firing multiple gunshots in the direction of the fleeing vehicle.

When the police arrived, responding to the sound of gunshots, they found [Appellant] assisting an injured individual out of the backseat of a vehicle. As the police attended to the injured individual, who had been shot, [Appellant] left and went inside the Abreu Super Deli. [Appellant] went to the back of the deli, where he encountered Milton Abreu, whose family owned the deli. [Appellant] handed Mr. Abreu his gun. Mr. Abreu then took the gun to the basement and placed it on top of a ceiling panel.

The Philadelphia Police Department has a Real Time Crime Center (the "Crime Center") where police officers can monitor video surveillance recorded on cameras connected to the Crime Center. Because a Crime Center camera was posted outside of the corner where the shooting occurred, the police at the Crime Center were able to view footage of the shooting and relay a description of one of the shooters to the officers on the scene. Those officers observed that the description of the shooter provided by the Crime Center matched [Appellant]. Police then viewed surveillance video from inside the Abreu Deli, which showed [Appellant] inside of the store. The officers then placed [Appellant] under arrest. Afterwards, Mr. Abreu informed the police where he had hidden [Appellant's] gun, and the police recovered it from the basement.

While [Appellant] was in custody at Curran-Fromhold Correctional Facility ("CFCF"), police received information from the National Integrated Ballistic Information Network ("NIBIN") linking the ballistics recovered from the November 19, 2019 shooting of Jose Espinosa-Molina to the firearm [Appellant] used on November 21, 2019, to fire down the street at the fleeing car.[FN3] After receiving this information from the NIBIN, Detectives Slobodian and McKenna picked up [Appellant] from CFCF and drove him back to the Philadelphia Police Department Homicide Unit for an interview. Following ***Miranda***[1] warnings, [Appellant] gave a statement to police wherein he confessed to the murder of Jose Espinosa-Molina and described in-detail the events leading to the murder.

[FN3] NIBIN is a service run by the ATF, in which a computer looks for matches of FCCs entered into the computerized

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

system. A match from NIBIN of two or more FCCs would be a preliminary indication that the FCCs were fired from the same firearm. After a NIBIN match, a trained ballistician would examine the actual ballistics to confirm the match.

Trial Ct. Op., 12/1/22, at 2-5 (some formatting altered and citations omitted).

Following a waiver trial, the trial court found Appellant guilty of one count each of third-degree murder, possession of a firearm by a prohibited person, carrying a firearm without a license, carrying a firearm on a public street or public property in Philadelphia, and possessing an instrument of crime (PIC) at Docket No. 521-2020.[2] **See** N.T., Trial, 3/15/22, at 145. At Docket No. 522-2020, the trial court found Appellant guilty of one count each of carrying a firearm without a license, possession of a firearm by a prohibited person, carrying a firearm on a public street or public property in Philadelphia, and recklessly endangering another person (REAP).[3] **See id.**

On June 30, 2022, the trial court held a sentencing hearing. At Docket No. 521-2020, the trial court imposed an aggregate term of twenty-six and one-half to fifty-three years' incarceration.[4] At Docket No. 522-2020, the trial

---

[2] 18 Pa.C.S. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

[3] 18 Pa.C.S. §§ 6106(a)(1), 6105(a)(1), 6108, and 2705, respectively.

[4] At Docket No. 521-2020, the trial court sentenced Appellant to consecutive terms of twenty for forty years of incarceration for third-degree murder, one to two years of incarceration for carrying a firearm by a prohibited person, three and one-half to seven years for carrying a firearm without a license, one to two years of incarceration for carrying a firearm in public in Philadelphia, and one to two years of incarceration for PIC. **See** N.T., Sentencing, 6/30/22, at 49-50.

court imposed an aggregate term of five and one-half to eleven years of incarceration.[5] The trial court ordered the sentence at Docket No. 522-2020 to run consecutive to the sentence at Docket No. 521-2020, resulting in a total aggregate sentence of thirty-two to sixty-four years of incarceration. *See* N.T., 6/30/22, at 49-50.

Appellant filed post-sentence motions at both trial court dockets which the trial court denied. Appellant filed a timely notice of appeal at each trial court docket, and both the trial court and Appellant complied with Pa.R.A.P. 1925.[6]

On appeal, Appellant raises the following issue:

> Did the [trial] court abuse its discretion in sentencing Appellant to an aggregate sentence [of] 32 to 64 years of incarceration because the sentencing court did not adequately consider appropriate retribution, Appellant's rehabilitative needs . . . , and specific and general deterrence and there were multiple statutory maximum sentences for Murder in the Third Degree and VUFA § 6106 without adequate justification of guideline maximums thereby effectively making Appellant's sentence a life sentence also without adequate justification?

_____

[5] At Docket No. 522-2020 , the trial court imposed consecutive sentences of one to two years of incarceration for carrying a firearm by a prohibited person, three and one-half to seven years of incarceration for carrying a firearm without a license, and one to two years of incarceration for REAP. *See id.* at 50. The trial court also imposed a sentence of one to two years of incarceration for carrying a firearm in public in Philadelphia, to run concurrently with Appellant's sentence for carrying a firearm without a license. *See id.*

[6] Appellant filed a motion to consolidate the appeals at 2502 EDA 2022 and 2504 EDA 2022 on October 18, 2022, which this Court granted. *See* Order, 1/3/23.

Appellant's Brief at 4.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted). "To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Here, Appellant filed a timely post-sentence motion, a timely appeal, and included a Rule 2119(f) statement in his brief. Accordingly, we must next determine whether Appellant has raised a substantial question for review. *Corley*, 31 A.3d at 296.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d

1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Grays**, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

We note that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." **Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citations omitted). Further, this Court has held that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question." **Commonwealth v. Swope**, 123 A.3d 333, 340 (Pa. Super. 2015).

In his Rule 2119(f) statement, Appellant argues that the sentence was manifestly excessive. Appellant asserts that that the trial court failed to consider mitigating factors and Appellant's rehabilitative needs, abused its discretion by imposing consecutive sentences, and imposed "an effective life sentence." **See** Appellant's Brief at 9-11. We conclude that Appellant has raised a substantial question for our review. **See Swope**, 123 A.3d at 340; **Caldwell**, 117 A.3d at 770. Accordingly, we will review the merits of Appellant's underlying claim.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Additionally, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered).

"[T]he trial court is required to consider the particular circumstances of the offense and the character of the defendant[,]" including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). This Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory

factors." ***Id.*** (citation omitted). This Court may only disturb a standard-range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2).

It is well settled that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted). Further, this Court has explained that "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018) (citations omitted), *abrogated on other grounds by* ***Commonwealth v. Felder***, 269 A.3d 1232 (Pa. 2022).

Here, at sentencing, the trial court stated as follows:

Thank you. All right. The first thing I'm going to do is say what I'm going to take into account in determining an appropriate sentence. I'll take into account everything presented during the history of this case, everything presented during the trial, everything presented during the sentencing hearing, all of the materials that I received in preparation for sentencing, including the [PSI] report, the investigation, the prior record score and the mental health evaluation.

I'll take into account the statements that I heard today from [Appellant], [Appellant's] father and his two friends who are in the courtroom. I'll take into account the statement that I heard from the mother of the decedent in this case. I'll take into account and consider carefully the sentencing guidelines, all of the mitigating factors that were highlighted by [Appellant's counsel] on behalf of [Appellant].

There are statutory factors I'm required to consider. One is the need for the protection of the public. I have grave concerns. The

problem is that I think [Appellant] summed it up how a typical person would react that may explain what happened on the 21st, but what happened on the 19th was a drive-by shooting in your car. You drove up and fired guns out of a window at a young man walking down the street who was shot in the head and killed and that I hope is not the typical way that people in the city will react to any kind of a threat and that's never okay no matter what's going on in your neighborhood to react with a drive-by shooting.

What happened the next day I think was terrible, but nothing like what happened two days before that and what happened the next two days was terrible because people with ordinary sensibilities even after they're threatened don't fire off a gun down the street when it is a commercial corridor, whereas I have seen in my practice here you have people waiting at a bus stop or people crossing the street or a three-year-old in a carriage who winds up getting killed because someone thinks it's okay to go out into the street and fire off their gun like you're in the wild west at somebody whose car is down the road. That's not how people can react in a civilized society, so because you think that's okay, I have concerns for the protection of the public.

Also, the gravity of the offense in relation to its impact by the victim and the community, I'll start with the community. This kind of senseless use of guns -- I'm not talking about carrying a gun that's unlicensed. That's bad. All right. I'm talking about using a gun, pulling it out and shooting at somebody, that is the kind of thing that has had a horrible impact on our community and you contributed to that with your behavior on two different days in this case, also, its impact on the gravity of the offense, its impact on the victim and the family.

This is a special young man who's gone. He's gone forever. Whatever happened to you, he doesn't get another day on this earth and that's a result of what you did in this case, and that's just a terrible -- I'm also going to take into account your rehabilitative needs. There are some aggravating factors that I think are present in this case.

This is not I think what I would consider to be garden variety third-degree murder, a drive-by shooting where a decedent takes a bullet in the head. That is the kind of shooting where this is a case that had this gone to a jury very well may have proven first-degree murder. It did not and I understand that's not an issue in this case. You weren't convicted of that.

I'm just saying ordinarily typical third-degree murder cases we don't see a bullet to the back of somebody's head. Whether you fired it or not, you were part of the team of people who pulled up in your car and fired bullets out -- you fired more than they did. You fired three times, he shot once, that's an aggravating factor as well.

Also, you did this while you were on probation for robbery adjudication while you were under the supervision of the court. You still thought it was okay to walk around with a gun with an 18 round magazine and pull it out and use it. That's an aggravating factor to me, the fact that you were on probation.

There are mitigating factors here, too. I was moved by the support you have which I believe was sincere from your father who I think is a victim here almost as much as – not as much, but almost as much as a lot of the other people in this room because he has suffered and will suffer as a result of your behavior. Okay. But when he tells me it's situational, as I said before, I'll say it again: A drive-by shooting is never situational. It just doesn't apply here. I'm going to take that into account and consider whatever is appropriate. . . .

Every sentence I'm going to impose is in the standard range of the sentencing guidelines starting with the transcript for November 19, 2019 -- before I forget, I'm going to order restitution in the amount of $1,641 to be paid in accordance -- I should say to the victims outlined on the paperwork which has been handed up. That will be paid in accordance with [Appellant's] ability to pay which will be determined by the Department of Corrections and that should be imposed on the murder transcript.

N.T., 6/30/22, at 43-49.

In its Rule 1925(a) opinion, the trial court further explained:

Here, in fashioning an appropriate sentence, the court explicitly considered everything presented throughout the history of the case, during the trial and at the sentencing hearing. The court also explicitly considered the [PSI] report, the investigation of [Appellant's] prior record score, his mental health evaluation, and the sentencing guidelines. The court took into account statements from [Appellant], [Appellant's] father, [Appellant's] two friends, and the victim impact statement from the decedent's mother. The court also considered all of the mitigating evidence that was

- 11 -

presented on behalf of [Appellant]. In addition, the court reviewed and analyzed the required statutory sentencing factors, including the need for the protection of the public, the gravity of the offense in relation to the impact on the victim and on the community, and [Appellant's] rehabilitative needs. In addition, the court delineated and weighed both the mitigating and aggravating factors in the case.

The sentences imposed by the court were manifestly reasonable. Contrary to [Appellant's] averment in the Statement of Errors, every sentence imposed by the court was within the standard range of the sentencing guidelines. Moreover, the magnitude of [Appellant's] criminal behavior establishes that the court was well within its discretion in running most of the sentences consecutively. In particular, and as the court noted in imposing sentence, this was not a typical third-degree murder case. [Appellant] participated in a drive-by shooting and fired multiple gunshots at the decedent, one of which killed the decedent by striking the back of his head. Moreover, [Appellant] participated in this murder while on probation for a robbery adjudication. Additionally, two days following the murder, after being fired upon by a group of individuals in a vehicle, [Appellant] chased the vehicle down the street of a commercial corridor and fired multiple gunshots down a busy public street, endangering many lives. Accordingly, the record demonstrates that the court's aggregate sentence was fully commensurate with [Appellant's] criminal conduct and in no way unreasonable. Finally, [Appellant's] contention that the court's sentence was "effectively . . . a life sentence" is frivolous. [Appellant] was 21 years old when sentenced, and therefore will be eligible for parole when he is 53 years old. Clearly, that is not a *de facto* life sentence. No relief is due.

Trial Ct. Op., at 6-8 (formatting altered and footnotes and citations omitted).

After review, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court thoroughly considered the facts of this case, Appellant's background, the PSI report, the appropriate sentencing factors, and the mitigating evidence presented at the sentencing hearing. *See Ventura*, 975 A.2d at 1135. The trial court

- 12 -

concluded that an aggregate sentence of thirty-two to sixty-four years of incarceration was appropriate in light of the context of this drive-by murder case. *See* Trial Ct. Op. at 7-8. On this record, we have no basis upon which to conclude that the trial court's application of the guidelines was "clearly unreasonable" or that the trial court abused its discretion in structuring Appellant's sentences consecutively.[7] *See* 42 Pa.C.S. § 9781(c)(2); *Foust*, 180 A.3d at 434; *Austin*, 66 A.3d at 808. For these reasons, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

_____

[7] As noted above, due to the consecutive nature of the sentences, Appellant claims that the trial court imposed an effective life sentence. Appellant's Brief at 10. We find this claim meritless. *See*, *e.g.*, *Commonwealth v. Bradley*, 237 A.3d 1131, 1140-41 (Pa. Super. 2020) (explaining that a defendant who was forty-seven years old at the time of sentencing and who would be eligible for parole at age sixty-four, fourteen years before he reaches the average life expectancy of seventy-eight and one-half years, did not receive a *de facto* life sentence). Here, Appellant asserts that his life expectancy is seventy-one and three-fourths years. Appellant's Brief at 10. However, as the trial court explained, Appellant will be fifty-three years old when he becomes eligible for parole, *see* Trial Ct. Op., at 8, and therefore, we agree with the trial court's conclusion that Appellant did not receive a *de facto* life sentence. *See id.*; *Bradley*, 237 A.3d 1140-41. Moreover, to the extent that Appellant briefly mentions that the trial court should have considered his maximum release date rather than his minimum parole date, *see* Appellant's Brief at 14, Appellant fails to develop this argument in any meaningful way, and we conclude that the issue is waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924-25 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of this Court, . . . to formulate [an a]ppellant's arguments for him." (citations omitted)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2023