J-A02044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :              PENNSYLVANIA
                                  :
            v.                      :
                                  :
                                  :
SHANE THOMAS GATES         :
                                  :
           Appellant          :     No. 510 MDA 2023

Appeal from the Judgment of Sentence Entered March 15, 2023
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001487-2020

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:       **FILED: MAY 16, 2024**

Shane Thomas Gates ("Gates") appeals[1] from the judgment of sentence following his jury convictions of drug delivery resulting in death ("DDRD"), conspiracy, criminal use of a communication facility ("CUCF"), and possession with intent to distribute a controlled substance ("PWID").[2] We affirm.

We take the underlying facts from our review of the certified record.[3]

---

[1] Even though this appeal raises an issue of first impression, the Commonwealth elected not to file a brief in this matter. **See** Letter, 11/1/23, at 1 (unnumbered).

[2] 18 Pa.C.S.A. §§ 2506(a), 903, 7512(a), and 35 P.S. § 780-113(a)(30).

[3] Our ability to detail the facts underlying Gates's conviction is hampered by: 1) the Commonwealth's failure to file a brief, 2) the trial court's failure to summarize the relevant facts, **see** Trial Court Opinion, 5/17/23, at 1-2, and 3) Gates's failure to include any citations to the record, and his failure to provide a "closely condensed chronological statement . . . of all the facts which
*(Footnote Continued Next Page)*

On January 28, 2020, Tyler Witmer ("Tyler") was at work when he received a phone call from his cousin Cameron Witmer, who had been unable to contact her brother, Trevor Witmer ("the victim"), Tyler's best friend. *See* N.T., 2/6/23, at 105-07. Tyler drove to the victim's home and found him dead in the bedroom. *See id.* at 107. At trial, the parties stipulated the victim died of a fentanyl overdose. *See id*. at 125-26.

Greencastle Police Chief John Phillippy ("Chief Phillippy") and Franklin County District Attorney's Office Detective Mark King ("Detective King") investigated the case. *See id*. at 112-13, 122; N.T., 2/7/23, at 71. As part of the investigation, Chief Phillippy interviewed Fischer Barnhart ("Barnhart"), whom Chief Phillippy knew was a friend of the victim. *See* N.T., 2/6/23, at 137-39. Based upon the interview, Chief Phillippy focused the investigation on Dyllan Wright ("Wright"). *See id*. at 140.

At trial, Wright, who testified in exchange for the reduction of charges against him, explained he was Gates's friend and the victim's acquaintance.

---

are necessary to be known in order to determine the points in controversy[.]" Pa.R.A.P. 2117(a)(4); *see* Gates's Brief at 8-10. Moreover, Gates's statement of facts does not constitute a "a balanced presentation of the history of the proceedings." Pa.R.A.P. 2117(b); *see* Gates's Brief at 8-10. A further complication here is that critical information concerning the victim's death was presented via video and a transcript from a prior proceeding was entered into evidence. None of the trial exhibits are included in the certified record. Although all these omissions make detailing the underlying events difficult, they do not hamper our review of Gates's claims. Accordingly, we will consider them.

*See* N.T., 2/7/23, at 5-6, 10-12.  Wright testified that, on January 27, 2020, the victim contacted him seeking to purchase fentanyl; however, Wright refused to sell to him.  *See id*. at 13, 15.  Gates then contacted Wright and Wright sold Gates two capsules containing fentanyl.  *See id*. at 17-18.

Detective King testified at trial that, based on Wright's information, the investigation focused on communications between Gates and the victim concerning fentanyl in the days prior to the victim's death.  *See id*. at 85-97. Detective King interviewed Gates on several occasions and Gates made various statements giving differing versions of the events surrounding the victim's death.[4]  *See id*. at 108; N.T. 2/8/23, at 5-14.

The jury convicted Gates of the above-listed offenses.  Subsequently, the trial court sentenced Gates to three standard-range sentences for DDRD, conspiracy, and CUCF,[5] to be served consecutively.  This resulted in an aggregate sentence of eight to twenty years in prison.  Gates filed a timely motion for reconsideration of sentence, which the trial court denied.  This timely appeal followed.[6]

---

[4] We are unable to describe the substance of Gates's statements because they are contained in the trial exhibits not included in the certified record.

[5] The conviction for PWID merged with the conviction for DDRD for sentencing purposes.

[6] Gates and the trial court complied with Pa.R.A.P. 1925.

Gates raises the following issues on appeal:

A. Did the trial court commit reversible error when it allowed Chief [] Phillippy to testify about a conversation Chief Phillippy had with [] Barnhart that was clearly hearsay in that Chief Phillippy was allowed to testify [] Barnhart told him that [] Barnhart "knew generally" what happened to the [victim] in this case based on [] Barnhart's prior out-of-court conversation with another person, where [] Barnhart was never called as a witness during trial nor in any other proceeding wherein he would have been subject to cross-examination?

B. Did the trial court commit reversible error when it failed to distribute juror notebooks until after the first Commonwealth witness testified[] and failed to allow jurors to have their notebooks for note[-]taking during opening statements, closing arguments, and deliberations in contravention of Pa.R.Crim.P. 644(A)?

C. Did the trial court commit an abuse of discretion when it sentenced [] Gates to three [] consecutive sentences for crimes that were committed in what was essentially one transaction or occurrence?

Gates's Brief at 6-7.[7]

Gates first issues asserts the admission of hearsay. In reviewing a challenge to the admission of evidence, we recognize the

admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

_____

[7] For ease of disposition, we have reordered the issues in Gates's brief.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (internal quotation marks and citations omitted). The Pennsylvania Rules of Evidence provide "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

In addition,

> [h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. . . ***[A]ny out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay***.

*Johnson*, 42 A.3d at 1035 (internal quotation marks and citations omitted; emphasis added).

Here, the following exchange occurred during the Commonwealth's examination of Chief Phillippy about the course of the investigation and his interview of the victim's friend, Barnhart:

Q. And did Mr. Barnhart have any knowledge [about the decedent's death]?

A. He did.

Q. Tell me about that?

A. He was brought in ---

[Defense Counsel]: I'm going to object, Your Honor. It's hearsay.

[The Commonwealth]: it's not being presented for the truth of the matter asserted. It's showing to specifically what Mr. -- what Chief Phillippy's next step is in getting to the next person in line. It's not necessarily presented for what Mr. Barnhart is saying as the truth. It's to show his steps.

\* \* \* \* \*

Q. Did Mr. Barnhart indicate his knowledge of how he knew what happened to Mr. Witmer?

A. Generically, yes.

Q. And specifically[,] he told you, that he spoke with Dyllan Wright?

A. Yes, I believe so.

Q. That would be the basis of his –

A. Yes.

\* \* \* \* \*

Q. And specifically[,] Mr. Barnhart turned you towards Mr. Wright?

A. That is correct, sir.

Q. What was the next step in the process?

THE COURT: Hang on a second. Are you done seeking testimony about Mr. Barnhart?

[The Commonwealth]: Yes, I was just –

THE COURT: I want to rule on the other objection from the defense and that hearsay objection is overruled.

N.T. 2/6/23, 137-39

Gates argues this testimony constituted hearsay because Barnhart was never called as a witness and was not subject to cross-examination. **See** Gates's Brief at 35-36. He claims this testimony involved "an out-of-court

statement by [] Barnhart that was offered by the Commonwealth to buttress why it would be calling [] Wright, [] Gates's co-defendant, to the stand." ***Id***. at 35.

The trial court disagreed. It explained:

> When viewed in the context of Chief Phillippy's testimony, it is clear from his testimony that he is describing the process of his investigation into [the victim's] death. His relation of what he learned from Barnhart was not offered by the Commonwealth to prove the truth of **whatever Barnhart's statement was**. There are many reasons why evidence of a statement (**if one could call this testimony a "statement"**) may be offered beyond proving the truth of that statement. This is clearly one of them. We submit that Chief Phillippy's testimony about his investigation through [] Barnhart does not meet the definition of hearsay.

Trial Court Opinion, 5/17/23, at 10 (emphases added).

The trial court did not err in denying Gates's hearsay claim. Chief Phillippy's testimony was limited in scope and did not involve the substance of Barnhart's statement to him, only that the information Barnhart gave him led him to investigate Wright. ***See*** N.T., 2/6/23, at 137-39. Thus, Chief Phillippy did not testify to any substantive details Barnhart made in his statement to him; rather, Chief Phillippy's testimony was quintessential "course of conduct" testimony and does not qualify as hearsay. ***See Johnson***, 42 A.3d at 1035. This defeats Gates's claim the court improperly admitted an

out of court statement for its truth.[8]  Because no hearsay was introduced in Chief Phillippy's discussion of his conversation with Barnhart, the trial court did not err.  **See Johnson**, 42 A.3d at 1035.[9]  Gates's first issue does not merit relief.

In his second issue, Gates contends the trial court violated Pa.R.Crim.P. 644(A)[10] when notebooks were not distributed to jurors until after the testimony of the first Commonwealth witness, and jurors were not permitted

---

[8] Gates's question presented on this issue is actually at odds with his substantive argument on the issue.  Upon review of Gates's brief, Gates seems to request that detailed statements of Barnhart should have been submitted as he speculates Barnhart's statement "may have had exculpatory information," and may have led to information helpful to his defense.  **See** Gate's Brief at 35-36.  Whatever the argument is, it is not a hearsay claim, and Gates is limited to a hearsay claim as it relates to Barnhart's statement on appeal.

[9] Moreover, Gates's claim would not succeed even if Chief Phillippy had testified about a statement Barnhart made, which he did not.  A police officer's testimony about an out of court statement is admissible to explain the officer's course of conduct.  **See Commonwealth v. Sneed**, 526 A.2d 749, 754 (Pa. 1987) (police officer's testimony describing contents of radio call which prompted his trip to the crime scene was not hearsay because it was introduced to explain why he went to scene); **Commonwealth v. Estepp**, 17 A.3d 939, 945 (Pa. Super. 2011) (police officer's testimony regarding confidential informant's statements implicating Estepp was admissible to explain officer's course of conduct in investigating case).

[10] "Jurors shall be permitted to take notes during opening statements, the presentation of evidence, and closing arguments for their use during deliberations."  Pa.R.Crim.P. 644(A).

to take notes during closing statements or to refer to their notebooks during deliberations.  *See* Gates's Brief at 26-30.  This is a matter of first impression.

Gates's issue calls for us to construe the Pennsylvania Rules of Criminal Procedure; thus, our standard of review is *de novo* and our scope of review of plenary.  *See Commonwealth v. Smith*, 290 A.3d 316, 319 (Pa. Super. 2023).

Gates maintains the alleged failure to timely distribute the notebooks during opening arguments and the first witness's testimony and during closing arguments and deliberations was "egregious error."  Gates's Brief at 27.  Gates avers we should "presume prejudice" because of the error as there is "really no mechanism by which you can determine the impact of the failure to distribute notebooks[.]"  Gates's Brief at 28.

While the trial court agreed it erred by not timely distributing the notebooks, the trial court maintains that Gates waived the claim by failing to object and that any error was harmless.  *See id*.

It is well settled law that this Court cannot consider events outside of the certified record.  *See Commonwealth v. Ross*, 57 A.3d 85, 96-97 (Pa. Super. 2012).  Here, the record only shows the notebooks were not distributed to the jury until after the Commonwealth's first witness testified.  *See* N.T., 2/6/23, at 111.  However, Gates's claim indicates the notebooks were not distributed during closings and deliberation but fails to point to anything in the

record that shows the jury were not given the notebooks during closing arguments or their deliberations. *See* Gates's Brief at 26-30. It is not this court's responsibility to comb through the record seeking the factual underpinnings of Gates's claim. *See Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n. 5 (Pa. Super. 1997). Although this Court has examined the relevant transcripts, it is unable to locate any mention of the notebooks or anything which would substantiate Gates's claim.[11] Accordingly, Gates has not preserved and presented a meritorious claim that the jurors did not have their notebooks during closing argument and deliberations.

Gates also failed to demonstrate his entitlement to relief by failing to timely object to the late distribution of the notebooks or the alleged failure to distribute them during closing arguments or deliberations. *See* N.T., 2/6/23, at 111; 2/8/23, at 46, 62, 122. *See also Commonwealth v. Ramos*, 231 A.3d 955, 957 (Pa. Super. 2020) (holding failure to make a contemporaneous objection at trial waives that claim on appeal); *Commonwealth v. Ortiz*,

_____

[11] While the trial court specifically acknowledges the late distribution of the notebooks, it never says the jury was not permitted to take notes during closing arguments or not given the notebooks during deliberations. *See* Trial Court Opinion, 5/17/23, at 6-8. Instead, the trial court states it "erred in instructing the jury on note taking," a claim not raised by Gates, and cites to various pages in the trial transcript. *Id*. at 8. We have examined the transcript pages in question and see nothing that references note-taking or the notebooks. *See* N.T., 2/8/23, at 45-47, 61-63, 122-24.

- 10 -

2023 WL 180078, at \*6 (Pa. Super. 1/13/23) (unpublished memorandum) (holding appellant waived his challenge to the failure to allow the jury to take notes during trial where counsel did not object).[12]  Accordingly, we hold Gates waived his issue regarding the notebooks.

Even if the claim were not waived, we agree with the trial court that  the error merits no relief.  **See Commonwealth v. Hariston**, 84 A.3d 657, 671 (Pa. 2014) ("the accused is entitled to a fair trial, not a perfect trial").  The Commonwealth's first witness, for whom the jury did not have notebooks, was the victim's cousin, Tyler, who found his body.  **See** N.T. 2/6/23, at 105-11.  Tyler briefly testified regarding his relationship with the victim and the circumstances which led to him finding the victim's body; he never mentioned Gates.  **See id**.  Further, as noted **supra**, there is no proof the jurors did not have their notebooks during closing arguments or deliberations.

Gates tacitly admits he cannot show prejudice, asking us instead to "presume prejudice".  **See** Gates's Brief at 28-30.  However, Gates provides no legal basis for such presumption.  **See id**.  Allowing jurors to take notes is a relatively recent innovation, and Gates points to nothing which would demonstrate jurors taking notes is so fundamental to the trial process that the

---

[12] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

absence of those notes would deprive Gates of a fair trial. In *Ortiz*, we held where the record revealed the defendant received a fundamentally fair trial, the failure to allow jurors to take notes resulted in either no prejudice or *de minimis* prejudice. *See Ortiz*, 2023 WL 180078, at *6. We find the reasoning in *Ortiz* persuasive. Thus, even if not waived, Gates's second claim would not entitle him to relief.

In his third and final claim, Gates challenges the trial court's imposition of consecutive sentences.[13] *See* Gates's Brief at 15-26.

A challenge to the discretionary aspects of a sentence is not absolute, but rather "must be considered a petition for permission to appeal." *Commonwealth v. Best*, 120 A.3d 329, 348 (Pa. Super. 2015) (citation and

---

[13] The March 24, 2023, sentencing transcript is not included in the certified record in this matter. This Court made inquiry to the trial court and was informed the sentencing hearing was not transcribed. It is well-settled "this Court may consider only the facts that have been duly certified in the record when deciding an appeal." *Commonwealth v. Kennedy*, 151 A.3d 1117, 1127 (Pa. Super. 2016) (citation omitted). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*). Thus, this Court would be well within its rights to find Gates's challenge to the discretionary aspects of sentence waived on this basis. *See Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa. Super. 2014). However, because there is no dispute regarding the consecutive sentences and because we can resolve the issue without recourse to the sentencing hearing transcript, we decline to find waiver on this basis.

internal citation omitted). To reach the merits of such a claim, this Court must determine:

> (1) whether the appeal is timely; (2) whether [the defendant] preserved [the] issue; (3) whether [the defendant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal citation omitted).

Gates timely appealed. His brief includes a Pa.R.A.P. 2119(f) concise statement. **See** Gates's Brief at 15-17. Regarding a substantial question Gates asserts the trial court wrongly imposed consecutive sentences where "these crimes were the result of one elongated transaction." Gates's Brief at 15 (bolding and unnecessary capitalization omitted).

Although Gates filed a timely post-sentence motion for reconsideration of sentence, he never objected to the imposition of consecutive sentences. **See** Motion to Reconsider Sentence, 3/24/23, at 2-3 (unnumbered). Instead, Gates asserted the victim's death was not caused by "any intentional,

- 13 -

reckless, or criminally negligent conduct" by Gates but by the victim's "own drug addiction." *Id*. at 2 (unnumbered).  Gates contended he should not shoulder the blame for the victim's death because he was not "exhibiting signs of opioid overdose" when he was with Gates and because the victim "injected himself with fentanyl." *Id*.  Lastly, Gates complained he was sentenced harshly, and the trial court disregarded steps Gates had taken to "rehabilitate himself." *Id*.

An appellant waives a challenge to the discretionary aspects of sentence not raised in a post-sentence motion and may not raise it for the first time on appeal.  *See Commonwealth v. Bradley*, 237 A.3d 1131, 1138-39 (Pa. Super. 2020) (finding claim waived where appellant did not raise it in a post-sentence motion).  Gates raised this issue for the first time in his Rule 1925(b) statement.  *See* Statement of Errors Complained of on Appeal, 5/5/23, at 1 (unnumbered).  Issues raised for the first time in a Rule 1925(b) statement are waived. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118-19 (Pa. Super. 2011); *see also* Pa.R.A.P. 302(a).  Because Gates did not raise the specific challenge raised in the instant appeal in his post-sentence motion,

raising it for the first time in his Rule 1925(b) statement, he waived it, and is therefore due no relief. [14]

For the reasons discussed above, we find Gates's issues are either waived or do not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/16/2024

---

[14] Even were the claim reviewable, it would lack merit. Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted). "[T]he imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court, and a challenge to the imposition of consecutive sentences simply does not raise a substantial question." **Commonwealth v. Lloyd**, 878 A.2d 867, 873 (Pa. Super. 2005) (citations omitted). Thus, Gates's discretionary sentencing claim is unreviewable.